## PHENIX INSURANCE COMPANY *v.* HART.

1. Where one of the defenses to an action upon a policy of fire-insurance was that the plaintiff had been guilty of fraudulent acts which, under the stipulations in the policy, rendered the same void, and when such defense was supported by testimony, it was erroneous to omit proper instructions as to the same. Being a vital issue in the case, the court should have covered it by a proper charge, though no request to do so was presented.

2. Where an important issue was strenuously contested, it was erroneous to give a charge easily susceptible of the construction that the defendant admitted the truth of the plaintiff's contention with respect to that issue.

3. Section 2140 of the Civil Code, which provides for the recovery, under certain conditions, of damages and attorney's fees in suits against insurance companies, is unconstitutional, because in violation of that portion of section 1 of the fourteenth amendment of the constitution of the United States which declares that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

4. Before a memorandum made for the purpose of preserving a record of a given fact or transaction can, in any event, be admitted in evidence as original testimony, it must affirmatively appear that it was made by the witness in connection with whose testimony it is offered, and that testimony must show absolutely the genuineness and correctness of the memorandum.

5. While the mere acts of receiving oral information as to the fact that a fire had occurred, and receiving a written list or memorandum of the goods alleged to have been destroyed by the fire, would not, without more, dispense with stipulations in the policy requiring written notice of the fire and formal proofs of loss, yet if the company's authorized agent accepted as sufficient the oral notice, and also accepted such list as a satisfactory compliance with the requirements as to furnishing proofs of loss, the right of the insured to enforce the policy would not necessarily be lost for lack of literal compliance with the terms of the policy as to these matters.

6. Several of the objections as to the admissibility of testimony failed to show with sufficient distinctness what the evidence objected to was, and the points made are in other respects too loose and general for consideration.

Argued January 5, — Decided February 26, 1901.

Action on insurance policy.    Before Judge Reid.    City court of Atlanta.    March 17, 1900.

*Slaton & Phillips,* for plaintiff in error.
*Westmoreland Brothers* and *D. W. Rountree,* contra.

FISH, J.    Mrs. Hart sued the Phenix Insurance Company for the loss of certain household goods and furniture, which she claimed was covered by a policy issued to her by the defendant.    The petition alleged that the plaintiff was entitled to recover, in addition to the value of the goods destroyed, damages and attorney's fees, under section 2140 of the Civil Code.    To such allegation the defendant demurred, on the ground that this section of the Civil Code is contrary to the constitution of the United States, in that it deprives insurance companies of property without due process of law, and denies them equal protection under the law.    The demurrer was overruled, and the defendant filed exceptions pendente lite.    There was a verdict for the plaintiff for the amount sued for, with interest, together with $90 damages and $100 attorney's fees.    The defendant moved for a new trial, which the court refused, on condition that plaintiff would write off the damages and attorney's fees.    The plaintiff complied with the requirement, and a new trial was denied.    Defendant in its bill of exceptions assigned error upon the judgment overruling its motion for a new trial, and also upon its exceptions pendente lite.

1. The policy sued on contained the following stipulation: " This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof, or if the interest

of the insured in the property be not truly stated herein, or in case
of any fraud or false swearing by the insured touching any matter
relating to this insurance or the subject-matter thereof, whether
before or after a loss." One of the pleas filed by the defendant set
forth in detail a violation by the plaintiff of this provision in the
policy, and there was evidence introduced tending to support such
plea. While the court stated to the jury this contention of the de-
fendant, it wholly omitted to instruct them upon this vital issue.
in the case. This omission was doubtless a mere oversight on the
part of the learned judge, but, in our judgment, it necessitates the
granting of a new trial, even though no request to charge upon this
issue was made by the defendant's counsel.

2. Another contention of the defendant was, that all of the prop-
erty for the loss of which the suit was brought was not in the house
and destroyed when it was burned. The court charged the jury:
"Now, the plaintiff alleges that there was in the house the list of
property which she attaches to her declaration (and the defendant
admits it to be a true copy). Of course, you can get the items by
referring to the list so attached." We think that this charge was
misleading, because susceptible of the construction that the defend-
ant admitted the list attached to the petition to be a correct list of
the property destroyed.

3. As a new trial must be granted in this case, it is necessary to
pass upon the question as to the constitutionality of section 2140
of the Civil Code, raised by the exceptions pendente lite to the over-
ruling of the demurrer. That section provides: " The several in-
surance companies of this State, and foreign insurance companies do-
ing business in this State, in all cases when a loss occurs, and they
refuse to pay the same within sixty days after a demand shall have
been made by the holder of the policy on which said loss occurred,
shall be liable to pay to the holder of said policy, in addition to the
loss, not more than twenty-five per cent. on the liability of said com-
pany for said loss; also, all reasonable attorney's fees for the prosecu-
tion of the case against said company: *Provided*, it shall be made to
appear to the jury trying the same, that the refusal of the company
to pay said loss was in bad faith." The question made is, whether
this section of the Civil Code is a violation of that part of section 1 of
the fourteenth amendment of the constitution of the United States
providing that no State shall "deprive any person of life, liberty, or

property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." We think the decision of the Supreme Court of the United States in Gulf, Colorado & Santa Fé Railway Co. *v*. Ellis, 165 U. S. 150, in principle, is conclusive as to the unconstitutionality of the code section under consideration. In that case a statute of Texas allowing an attorney's fee to the plaintiff in actions against railroad corporations, on claims not exceeding in amount $50, for personal services rendered, or labor done, or for damages, or for overcharges in freight, or for stock killed or injured, was adjudged unconstitutional. Mr. Justice Brewer, speaking for the majority of the court, said: "The single question in this case is the constitutionality of the act allowing attorney's fees. The contention is that it operates to deprive the railroad companies of property without due process of law, and denies to them the equal protection of the law, in that it singles them out of all citizens and corporations, and requires them to pay in certain cases attorney's fees to the parties successfully suing them, while it gives to them no like or corresponding benefit. Only against railroad companies is such exaction made, and only in certain cases. . . The Supreme Court of the State considered this statute as a whole and held it valid, and as such it is presented to us for consideration. Considered as such, it is simply a statute imposing a penalty upon railroad corporations for a failure to pay certain debts. No individuals are thus punished, and no other corporations. The act singles out a certain class of debtors and punishes them when for like delinquencies it punishes no others. They are not treated as other debtors, or equally with other debtors. They can not appeal to the courts as other litigants under like conditions and with like protection. If litigation terminates adversely to them, they are mulcted in the attorney's fees of the successful plaintiff; if it terminates in their favor, they recover no attorney's fees. It is no sufficient answer to say that they are punished only when adjudged to be in the wrong. They do not enter the courts upon equal terms. They must pay attorney's fees if wrong; they do not recover any if right; while their adversaries recover if right and pay nothing if wrong. In the suits, therefore, to which they are parties they are discriminated against, and are not treated as others. They do not stand equal before the law. They do not receive its equal protection. All this is obvious from a mere inspection of the statute. . .

It is well settled that corporations are persons within the provisions of the fourteenth amendment of the constitution of the United States. [Citing cases.] . . A State has no more power to deny to corporations the equal protection of the law than it has to individual citizens. But it is said that it is not within the scope of the fourteenth amendment to withhold from the States the power of classification, and that if the law deals alike with all of a certain class it is not obnoxious to the charge of a denial of equal protection. While, as a general proposition, this is undeniably true [citing cases], yet it is equally true that such classification can not be made arbitrarily. . . . That must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. . . It is, of course, proper that every debtor should pay his debts, and there might be no impropriety in giving to every successful suitor attorney's fees. Such a provision would bear a reasonable relation to the delinquency of the debtor, and would certainly create no inequality of right or protection. But before a distinction can be made between debtors, and one be punished for a failure to pay his debts, while another is permitted to become in like manner delinquent without any punishment, there must be some difference in the obligation to pay, some reason why the duty of payment is more imperative in the one instance than in the other. If it be said that this penalty is cast only upon corporations, that to them special privileges are granted, and therefore upon them special burdens may be imposed, it is a sufficient answer to say that the penalty is not imposed upon all corporations. The burden does not go with the privilege. Only railroads of all corporations are selected to bear this burden. The rule of equality is ignored." The Ellis case was approvingly cited in Atchison, Topeka & Santa Fé Railroad Co. v. Matthews, 174 U. S. 96. In San Antonio etc. Railway v. Wilson, 19 S. W. 910, it was held, by the Court of Appeals of Texas, that a statute providing that in the event of a railroad company refusing to pay its indebtedness to an employee within twenty days after demand, he could recover as damages twenty per cent. in addition to the amount due, was class legislation and unconstitutional. In the course of the opinion, after referring to those statutes allowing double damages for stock killed, the court observed: "But when we consider the relations of rail-

way companies to their own servants, both as to contracts of employment and payment, we find a field in which special legislation has no right ordinarily to enter, and in which railways stand on the same footing with all other corporations or persons." In New York Life Insurance Co. *v.* Smith, 41 S. W. 680, the same court held that a statute "providing that in all cases where loss occurs, and a life or health insurance company liable therefor fails to pay the same within the time specified in the policy, after demand made, it shall be liable to the holder of such policy, in addition to the amount of such loss, for twelve per cent. of the amount of such loss, together with all reasonable attorney's fees, for the prosecution and collection of the same, is in violation of section 1 of the fourteenth amendment of the constitution of the United States, as discriminating against such companies." In Wilder *v.* Chicago &c. Ry., 70 Mich. 382, where there was involved the validity of a statute authorizing an attorney's fee of $25 to be taxed against a railway company against which judgment should be rendered in an action for injuries to stock, the court said: "But the imposing of the attorney's fee of $25 as costs can not be upheld. The legislature can not make unjust distinctions between classes of suitors without violating the spirit of the constitution. Corporations have equal rights with natural persons as far as their privileges in the courts are concerned. They can sue and defend in all courts the same as natural persons, and the law must be administered as to them with the same equality and justice which it bestows upon every suitor, and without which the machinery of the law becomes the engine of tyranny. . . Here the legislature has granted special advantages to one class at the expense and to the detriment of another, and has undertaken to make the courts themselves the active agents in this injustice, and to force them to impose penalties in the disguise of costs upon railroad companies for simply exercising, in certain cases, the common right of every person to make a defense in the courts when suits are brought against them." These principles were reaffirmed in Lafferty *v.* Chicago & W. Mich. Ry., 71 Mich. 35, and Grand Rapids Chair Co. *v.* Runnels, 77 Mich. 104, 111. In South & North Ala. Railroad *v.* Morris, 65 Ala. 193, the question was as to the validity of a statute providing that a railroad corporation, or any complainant against it, taking an appeal from the judgment of a justice of the peace in a suit for

damages to live stock, and failing to sustain such appeal, should be liable for a reasonable attorney's fee, not exceeding a named amount, to be taxed as part of the costs. .This statute gave the same right to the corporation as to its adversary, and was limited to cases in which an appeal was taken from a judgment already rendered by a judicial officer. Yet the Supreme Court of Alabama held the statute to be in conflict with the constitution of the State and also in conflict with the fourteenth amendment of the constitution of the United States, and, in referring to the provisions on the subject in the State and Federal constitutions, said: "The clear legal effect of these provisions is to place all persons, natural and corporate, as near as practicable, upon a basis of equality in the enforcement and defense of their rights in courts of justice in this State; except so far as may be otherwise provided in the constitution. This right, though subject to legislative regulation, can not be impaired or destroyed under the guise or device of being regulated. Justice can not be sold, or denied, by the exaction of a pecuniary consideration for its enjoyment from one, when it is given freely and open-handed to another, without money and without price. Nor can it be permitted that litigants shall be debarred from the free exercise of this constitutional right, by the imposition of arbitrary, unjust, and odious discriminations, perpetrated under color of establishing peculiar rules for a particular occupation. Unequal, partial, and discriminatory legislation, which secures this right to some favored class or classes, and denies it to others, who are thus excluded from that equal protection designed to be secured by the general law of the land, is in clear and manifest opposition to the letter and spirit of the foregoing constitutional provisions. . . The section of the Code under consideration (§ 1715) prescribes a regulation of a peculiar and discriminative character, in reference to certain appeals from justices of the peace. It is not general in its provisions, or applicable to all persons, but is confined to such as own or control railroads only; and it varies from the general law of the land, by requiring the unsuccessful appellant, in this particular class of cases, to pay an attorney's tax-fee not to exceed twenty dollars. A law which would require all farmers who raise cotton to pay such a fee, in cases where cotton was the subject-matter of litigation, and the owners of this staple were parties to the suit, would be so-discriminating in its nature as to appear

manifestly unconstitutional; and one which should confine the tax alone to physicians, or merchants, or ministers of the gospel, would be glaring in its obnoxious repugnancy to those cardinal principles of free government which are found incorporated, perhaps, in the bill of rights of every State constitution of the various commonwealths of the American government. We think this section of the Code is antagonistic to these provisions of the State constitution, and is void. . . The section in question is also violative of that clause in section 1, art. XIV of the constitution of the United States, which declares that no State shall 'deny to any person within its jurisdiction the *equal protection of its laws.*' This guaranty was said by Justice Bradley, in Missouri *v.* Lewis (101 U. S., 1 Otto, 22,30), to include 'the equal right to resort to the appropriate courts for redress.' · 'It means,' as was further said by the court, 'that no person, or class of persons, shall be denied the same protection which is enjoyed by other persons, or other classes, in the same place, and under like circumstances.' The same court, in United States *v.* Cruikshank, 92 U. S. (2 Otto), 542, 555, per Waite, C. J., used the following language, in discussing the foregoing constitutional clause: 'The equality of the rights of citizens is a principle of republicanism. Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. That duty was originally assumed by the States, and it still remains there.'—Ward *v.* Flood, 48 California, 36." In view of these authorities and many others cited in the opinions from which we have·quoted, we are constrained to hold that section 2140 of our Civil Code, which manifestly discriminates against insurance companies by imposing upon them penalties for a failure to pay a debt, is unconstitutional, being in conflict with that portion of section 1 of the fourteenth amendment of the constitution of the United States which declares that no State "shall deny to any person within its jurisdiction the equal protection of the laws.". While the point was not made, it may not be improper to remark that the section of the code under consideration is, in our opinion, also contrary to the spirit, at least, of the provisions in the bill of rights in our own State constitution, in which it is declared: (Par. 2) "Protection to person and property is the paramount duty of government, and shall be impartial and complete." (Par. 3) "No person shall be deprived of life, liberty, or property,

except by due process of law." (Par. 4) "No person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State, in person, by attorney, or both."

4. One of the grounds of the motion for a new trial was: "Because the court erred in refusing to admit in evidence, on motion of defendant, a copy of the alleged proof of loss introduced by plaintiff, which, as movant contends, had been placed in the hands of Hewitt, a detective, with cross-marks opposite certain items, made under the following circumstances: Hewitt testified, as movant contends, that Capt. Slaughter, chief of detective force, gave him a list to take out to Mrs. Hart's house on Crew street, to which she moved after the fire, to identify such goods in said house as might appear on the list. Hewitt identified the list as the one given him, and testified, as movant contends, that the cross-marks were made immediately after he had gone to the house, by him and the young man with him, and the cross-marks then identified what he saw in the house on Crew street, identical with the list, although he said that at the time of giving his testimony some of the articles opposite to which was a cross-mark were not in the Crew street house, as he then recollected. The following articles had the cross-mark opposite them." Then follows a list of articles. It appears that all of the memorandum was not made by the witness Hewitt, the cross-marks being made by him and the young man with him, and it was not shown which were made by the witness and which by the young man. It further appears from the testimony of the witness that there was error committed in making some of the cross-marks, as some of the articles opposite to which there was a cross-mark were not in the Crew street house. Under these circumstances, there was no error in excluding the memorandum offered in evidence. Before a memorandum made for the purpose of preserving a record of a given fact or transaction can, in any event, be admitted in evidence as original testimony, it must affirmatively appear that it was made by the witness in connection with whose testimony it is offered, and that testimony must show absolutely the genuineness and correctness of the memorandum.

5. Another complaint in the motion for a new trial was, that the court erred in refusing to instruct the jury, as requested in writing, to the effect that unless certain stipulations in the policy as to written notice of the fire and formal proofs of loss were strictly com-

plied with by the plaintiff, she could not recover. In view of the evidence of the plaintiff, there was no error in refusing to give such requests. The plaintiff testified, in substance, that the fire occurred late Friday night; that she saved and had no clothes to wear to the office of the agent and adjuster the next day; that a very hard rain prevented her from going to his office on Monday; that she went to see him early Tuesday morning, and gave him verbal notice of the fire; that immediately after the fire such agent and adjuster went to the premises where the fire occurred, and personally examined them; that within the time required by the policy she made out a complete and correct list of the property alleged by her to have been burned, and at its valuation; that she carried this list to the company's agent and adjuster, and he received it, assuring her that it was satisfactory and she need not swear to it or otherwise verify it, and that he thereupon took up the matter of adjusting the loss with her, and told her that the money would be paid in sixty days; that he kept such list until it was produced, under notice, upon the trial, and that her attention was never called to any defects in it. While the mere acts of giving verbal notice of the fire to the agent of the insurance company and furnishing him with a written list, unsworn to, of the goods alleged to have been destroyed were not, without more, sufficient compliance with the stipulations in the policy requiring written notice of the fire and formal proofs of the loss, yet if the company's authorized agent accepted as sufficient the oral notice and also accepted such list as a satisfactory compliance with the requirements of the policy as to furnishing proofs of loss, the right of the insured to enforce the policy would not necessarily be lost for lack of literal compliance with the terms of the policy as to these matters. *Alston* v. *Phenix Ins. Co.*, 100 *Ga.* 287; Ostrander; Fire Ins. §§ 221, 224, 227, 229; Welsh *v.* Assurance Corp., 151 Pa. St. 607; German Fire Ins. Co. *v.* Stewart (Ind. App.), 41 N. E. 286.

6. No amplification of the matters dealt with in the sixth head-note is necessary.

*Judgment reversed. All concurring, except Cobb, J., absent.*