## 17025.  MACON COUNTY ASSOCIATION OF THE FARMERS MUTUAL FIRE INSURANCE COMPANY OF GEORGIA *v.* SLAPPEY.

1. In this action upon a fire-insurance policy the evidence authorized the inference that the house for the loss of which the plaintiff sued was one of the houses covered by the policy.
2. The evidence failed, as a matter of law, to show any violation of the terms of the policy, either express or implied. Any errors of the charge of the court upon this subject were therefore harmless to the insurer.
3. Under all the facts appearing in the record it can not be said that the trial court erred in refusing a temporary postponement of the case as requested by the leading counsel. There was no error in overruling the motion for a new trial.

DECIDED SEPTEMBER 18, 1926.

Complaint; from city court of Oglethorpe—Judge Greer. November 2, 1925.

*M. Felton Hatcher, John M. Greer,* for plaintiff in error.

*John B. Guerry,* contra.

BELL, J.   George A. Slappey brought suit against the Macon County Association of the Farmers Mutual Fire Insurance of Georgia, a corporation, upon a policy of fire insurance. The policy and the attached application described as the subject-matter of the contract three houses as follows: "1 F house, located 2 miles N. Marshallville, used as tenant, made of wood, cover of wood, with three rooms, good condition. . . 2 F house, located 150 yards W. No. 1, used as tenant house, made of wood, cover

47

of wood, with three rooms, good condition. . . 3 F house, located 150 yards W. No. 2, used as tenant house, made of wood, cover of wood, with three rooms, good condition." Each house was insured for $400. The suit was for the loss by fire of house No. 2. The defendant in its answer denied "that any of the property covered by said policy was or has ever been destroyed, and states here and now that the building which the petitioner claims was destroyed was not and has never been covered by the policy of insurance mentioned." The remainder of the answer was a mere general denial of the material allegations of the plaintiff's petition.

The company, by its name and by the form of the particular contract, appears to have been organized as a mutual company mainly for the purpose of insuring farm property or the property of farmers. The policy provided that the company and the insured should be governed by the by-laws. A copy of the by-laws was attached to the petition and contained the following provisions: "4. No building shall be taken into this company within any town or city, unless said building is made of metal, stone, or brick, and covered with metal, and is at least 100 feet from the property of a neighbor, and if made of wood and covered with metal, it shall be 150 feet, and if both made of wood and covered with wood it shall not be less than 200 feet from the building of a neighbor. 5. The agent may take into this company dwellings, barns, and contents (except seed and lint cotton), and outbuildings, household goods of all descriptions, farming utensils, including pleasure carriages, harness, and implements usually kept in barns. The agent can insure live stock; also churches and schoolhouses. 6. Should any member desire to take out insurance on cotton, or any goods stored in buildings insured in this company, said goods being such as this company does not insure, then shall said member at once notify the agent or director, who shall suspend both the insurance and the liability to assessment to the same on such building until said policy expires, when the building shall again be reckoned on the association as before without additional charge to the owner." *"Debarred From Insurance.—* Ginhouses, sawmills, any house that has steam power in it, stores, contents of stores, houses with stick and dirt chimneys, houses in town as per section 4, no cotton in the seed or bale." No other

provisions either of the policy itself or of the by-laws are here material. At the trial the jury found a verdict in favor of the plaintiff. The defendant made a motion for a new trial, which was overruled, and it excepted.

1. The contention that the policy did not cover the particular house seems to be based upon the theory that the house was a storage house and not a tenant house, or that the description of the property in the policy did not include the house destroyed. The evidence shows that at the time the policy was issued the plaintiff had on his farm only three houses of three rooms each, located generally but not exactly as stated in the policy. There were at that time only four houses in all on the place, the fourth being "a small house about half a mile up toward Ft. Valley." The plaintiff testified that the house for the loss of which he sued "was not built like the other two" mentioned in the policy; "it was built without a chimney and was divided into two compartments," and he used it both as a tenant house and as a storage house. He would have peach pickers sleeping in the house during peach season. He used it "for storage sometimes and for tenants sometimes." A contractor, introduced as a witness for the plaintiff, testified that he built the house in question, and that it was known as a "shotgun house, being about 20 by 36 feet," and that it had "two partitions in it, making three separate compartments. It had a window in each end and some windows in the back. It could be used as a tenant house and as a storage house." It had no front porch and was not ceiled. "The door was a large one and could be slided back. The steps were movable." The secretary of the insurance company, introduced as a witness for the defendant, testified that he looked at the "burned house" and that it was "not either of the houses described in the insurance policy." Another witness testified for the defendant as follows: "A building which is 22 by 36 feet, with a large sliding door, no front porch, with three compartments with no door between them, and with no chimney, is not a tenant house. I am familiar with tenant houses as they are usually built." There is nothing in the evidence to show whether or not the house was occupied by tenants at the time the policy was written. There was evidence to the effect, however, that the agent who wrote the policy did so after viewing the particular house with the others

described in the policy and himself filled out the application.

We think the above evidence was sufficient to authorize, if not to demand, the inference that the house in question was covered by the policy. The thing insured *was not a tenant house,* but an "F house," described in part as being used as a tenant house. The insurer does not suggest that any other house was meant. Even if that part of the description referring to the use may have been false or incorrect, enough remained to identify the property, and where this is true the false part of the description will not be considered. 13 Am. & Eng. Enc. L. (2d ed.) 118; 26 C. J. 87.

2. Although the defendant did not plead it, a further contention made under the evidence was that the plaintiff had violated the terms of the policy by putting the property to a prohibited use. The court, in the charge to the jury, submitted this contention as a defense, and several portions of the charge dealing with this subject are assigned as error. Since the defendant filed no plea raising such issue, the court was not required to notice this contention in charging the jury, but, the evidence having gone in without objection and the court having charged the jury thereon, absence of a proper plea will not matter in this court, where the answer could have been amended to allow the evidence. Under the record, however, we think that there was no evidence to sustain the defense claimed, and that if the court committed errors in the instructions with reference thereto, the defendant was not harmed. In this view it is unnecessary to pass upon the correctness of the various excerpts assigned as error.

The plaintiff testified that he had stored in the house farm produce, including cotton, at various times during the life of the policy. He did not know whether any of such produce was in the house at the time of the fire or not, but did not "think there was." One or more witnesses for the defendant testified to having seen the ashes soon after the fire, and that some were "in the shape of cottonseed." This is the evidence upon which the defendant bases the contention that the terms of the policy were violated. The provisions of the by-laws quoted above only prohibit the insurance of cotton and the insurance of a building in which *insured* cotton is stored. The statement in the application that the house was being used as a tenant house was merely descriptive and referred to present use. It did not constitute a warranty

against a different use.   26 C. J. 194, 203.   There is no express provision either in the by-laws or in the policy against the mere storing of cotton in any building insured.   But § 2482 of the Civil Code (1910) provides that "Any change in the property, or the use to which it is applied, without the consent of the insurer, whereby the risk is increased, voids the policy;" and it would seem that the provisions of this section should be considered as impliedly written into the policy, and that if they were violated the company would not be liable.   It therefore becomes necessary to determine from all the surrounding facts and circumstances what character of use was contemplated by the policy.   As is indicated above, the company did not insure a tenant house but an "F house."   From the various provisions of the policy and the character of the contracts usually written by the company and the extraneous evidence, we should say that an "F house" is prima facie a farm house.   This court will take judicial cognizance of the custom of farmers to store cotton and other farm produce in any outhouse on the plantation having space that may be needed for such purpose and that houses which are at times used as tenant houses may at other times be employed as storage houses. Insurers are bound to know the customs of a place where they transact business and will be held to have made their contracts in reference thereto.   *Todd* v. *German American Insurance Co.,* 2 *Ga. App.* 789 (5) (59 S. E. 94).   The contract of insurance must be construed so as to carry out the true intention of the parties and will be interpreted liberally in favor of the object to be accomplished.   If it is fairly susceptible of two different constructions the one most favorable to the insured will be adopted.   Civil Code, 1910, § 2475; *Johnson* v. *Mutual Life Ins. Co.,* 154 Ga. 653 (1, 2) (115 S. E. 14).   It could not be said that the parties did not contemplate that cotton would be stored in the particular building.   Moreover, by-law 6 would indicate that they actually intended that cotton might be stored therein, because it is provided in this by-law that "Should any member desire to take out insurance on cotton or any goods stored in buildings insured in this company, said goods being such that this company does not insure," then the company's insurance on such buildings shall be suspended until the expiration of the policy on the contents. This, so far as material to this case, can mean nothing except that the

company would insure a building in which cotton was stored but would not insure a building in which *insured* cotton was stored.

Even aside from this by-law, we think it was permissible for the insured to put the house to any use which was a customary and usual incident to the business of farming and that no other use was shown by the evidence. See *Maril* v. *Conn. Fire Ins. Co.,* 95 *Ga.* 604 (23 S. E. 463, 30 L. R. A. 835, 51 Am. St. R. 102). The present case is entirely different in its facts from the case of *Alston* v. *Greenwich Ins. Co.,* 100 *Ga.* 282 (29 S. E. 266), relied on by counsel for plaintiff in error. We conclude that the evidence failed as a matter of law to show the violation of any express or implied provision of the policy and that the defendant was never entitled to a submission of the case to the jury upon any such theory. All of the assignments of error on the charge of the court relate to this point and were therefore without merit.

3. One ground of the motion for a new trial complained that the court erred in not postponing the case from Monday until Wednesday because Mr. Hatcher, leading counsel for the defendant was engaged in the trial of another and very important case in the superior court of Bibb county and for this reason was unable to attend the trial of the instant case on Monday, the day on which it was set for trial and on which it was tried. In an affidavit attached to this ground of the motion it was shown that Mr. Hatcher was the defendant's leading counsel and that a request for the postponement was made and refused. It seems to be undisputed in the record that Mr. Hatcher was the leading counsel, but it is certified by the trial judge that this fact was not made known to him at the time the postponement was requested, and that he did not know the fact until it was developed in the motion for a new trial. The record makes no issue between the judge and the attorney on this point. A continuance "will not be granted for the absence of counsel attending cases pending in another court except in the Court of Appeals or the Supreme Court." *Austin* v. *State,* 160 *Ga.* 509 (128 S. E. 791). The case had been tried twice already. One trial resulted in a mistrial and the other in a verdict for the defendant. The court set aside this verdict on a motion by the plaintiff and later granted the defendant a continuance. At this grant the case was put upon terms and set for trial on Monday morning, September 28, 1925. The motion to

check the case, not to continue it, was made by telephone on September 26 or 27. Under all the facts appearing in the record this court can not hold that the judge erred in refusing the request to postpone.

The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*