27896. AMERICAN ALLIANCE INSURANCE CO. *v.* PYLE.

DECIDED MARCH 13, 1940.    ADHERED TO ON REHEARING, MARCH 30, 1940.

158

*Lanham & Parker, Jones, Fuller & Clapp, Alex. P. Gaines,* for plaintiff in error.

*Maddox & Griffin,* contra.

STEPHENS, P. J. (After stating the foregoing facts.)

■ The defendant, by amendment to its answer, alleged that the

premises had been insured as a dwelling, and that after the issuance of the policy there had been a change in the use and occupancy thereof, in that the insured had permitted illegal sale of liquor on the premises, thereby increasing the risk. There is no express provision in either of the policies (in so far as it concerns this court in passing upon the demurrer to the defendant's amended answer) prohibiting a change in the use or occupancy of the property insured, or providing that the policies shall be void upon an increase in the risk. Nor is there any provision in effect prohibiting the illegal sale of liquor on the premises, either by the insured, or by another with his permission, or otherwise. But the Code, § 56-823, provides that "any change in the property or the use to which it is applied, without the consent of the insurer, whereby the risk shall be increased, shall void the policy." This statutory provision is to be considered as impliedly read into the policies sued on. *Macon County Asso.* v. *Slappey,* 35 *Ga. App.* 737, 741 (134 S. E. 834). This court, in construing the policies, and in determining whether the allegations of the amendment to the answer alleged facts constituting an avoidance of the policy, will consider the policies as if the Code provisions were written therein. Therefore any change in the property, or the use to which it is applied, which increases the risk insured against will void the policy. Likewise, the mere use of the insured premises for an illegal purpose, even though such use constitutes a change in the use and occupancy thereof, will not avoid a fire-insurance policy only prohibiting generally an increase of risk, unless it appears that such illegal use actually increases the risk. So long as no condition in the policy relative to the risk is broken, the owner of an insured building may allow it to be occupied by any one he pleases; and when the policy contains no express prohibition of a change in the use, the fact that at the time of the loss the building was being used for a purpose different from that mentioned does not avoid the policy; but where the policy provides that it shall become void by "any change in the property or the use to which it is applied, without the consent of the insurer, whereby the risk shall be increased," this amounts to a promissory or continuing warranty, a breach of which will avoid the policy, whether it contributed to the loss or not. 26 C. J. 203-205, notes 33, 34, and cit. It has been held that a breach of a provision in a fire insurance policy, with refer-

ence to the use or occupancy of the insured premises, avoids the policy, notwithstanding the absence of a causal connection between the increased hazard and the origin of the fire. See Imperial Fire Insurance Co. v. Coos County, 151 U. S. 452 (14 Sup. Ct. 379, 38 L. ed. 231) ; Royal Exchange Assurance of London v. Thrower, 246 Fed. 768, affirming 240 Fed. 811, 1024.

A change within the knowledge or control of the insured in the use and occupancy of insured premises, which increases the risk, voids the policy. However, in this case it is alleged that the use of the premises for unlawful sale of liquor, which constituted a change in their use and occupancy, and which increased the risk, was under the control and direction of the wife of the insured and with his permission. Whether or not there has been a change in use and occupancy of the insured premises, whereby the risk is increased, is a question of fact for determination by a jury. "Whether the hazard was increased by reason of conducting on the insured premises a certain business is a question of fact for determination as ordinary questions of fact, and can not be decided by reason of the fact that the insurer charged higher rates for that character of occupancy than others." Royal Exchange Assurance of London v. Thrower, supra. This construes the Georgia statute. Powell v. Commonwealth Insurance Co., 3 Ga. App. 436 (60 S. E. 120); Alston v. Greenwich Insurance Co., 100 Ga. 282 (29 S. E. 266); Adair v. Southern Mutual Insurance Co., 107 Ga. 297 (33 S. E. 78, 45 L. R. A. 204, 73 Am. St. R. 122); 26 C. J. 200, 555. It follows that the allegations to the effect that the premises were insured as the dwelling-house of the insured, that the premium rate charged was based upon the use and occupancy of these premises, by the insured as a dwelling, that after the issuance of the policy the insured premises were vacated by the insured and his family as a dwelling, that neither the insured nor his family was so using and occupying the premises at the time of the fire, but they were being used at such time for the purpose of illegally selling liquor, at retail, both day and night, under the direction of the wife of the insured and with his approval and permission, all of which was without the defendant's consent, and that such use of the premises, considering the nature and illegal character of the business, "contributed to increase the hazard insured against," thereby voiding the policy sued on, were sufficient as against a general demurrer.

The court erred in sustaining the demurrer and striking these allegations. · ·

■ The defendant alleged that a can of inflammable material was contained in the house at the time of the fire, and that the plaintiff was grossly negligent in permitting it to be carried into the house, and in permitting the house to be left in the control of Andrews, who was not employed by or subject to the control of the plaintiff or his wife, and in permitting the operation of illicit liquor business in the house, and that by reason of such gross negligence the defendant was not liable to the plaintiff in any sum. The judge sustained the plaintiff's demurrer, and struck these allegations as setting up no defense to the suit on the policies. "The insured shall be bound to ordinary diligence in protecting the property from fire, and gross negligence on his part shall relieve the insurer." Code, § 56-819. In order for the allegations of the amendment to make a defense under § 56-819, based on gross negligence of the plaintiff, it must appear that "there had been such negligent use of the property in question as to materially increase the risk and to cause the damage complained of." *Southern Mutual Insurance Co.* v. *Hudson,* 113 *Ga.* 434, 449 (38 S. E. 964). It matters not how grossly negligent the insured might have been in permitting the sale of liquor upon the premises, and in having a can of inflammable material in the house at the time of the fire, or in permitting the premises to be left in the control of another person not employed by or under the control of the plaintiff or his wife, unless this conduct of the insured constituted gross negligence and materially increased the risk and caused the damage complained of, a defense under § 56-819 would not be alleged. The defendant does not aver that the alleged negligent use of the premises was such as to materially increase the risk and cause the fire and the consequent damage sustained as a result of the fire. Therefore the allegations of the answer were insufficient to set up a defense under the Code, § 56-819, and the court did not err in sustaining the demurrer to this portion of the defendant's amended answer.

■ The defendant alleged that the fire which destroyed the house and furniture insured "was procured by plaintiff," and that the defendant acted in good faith in refusing to pay the loss, by reason of the fact that the fire was of incendiary origin. The

court struck this portion of the answer on the special demurrer on the ground that it was not alleged in what way the plaintiff procured the burning of the property, who burned the property, or that the plaintiff burned it; and that the allegations in respect thereto were conclusions without any allegations of fact upon which to base them. This portion of the defendant's amended answer was subject to the special demurrer.

■ The policies sued on provided that they should be void "in the case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject-matter thereof, whether before or after the loss." The defendant alleged that on August 17, 1938, it received an affidavit dated August 10, 1938, in which the plaintiff swore that the cost of the property insured under the policy on the household effects was $971.04; that on April 8, 1939, the plaintiff testified before a court commissioner that the property insured under this policy was as set out in the above affidavit; that on that date the plaintiff testified falsely respecting the cost of the materials used in the construction and repair of the property insured; that on that date the plaintiff further testified falsely that neither he nor his wife was engaged in the illegal sale of liquor nor were the insured premises so used on or before the date of the fire; that such sworn statement and testimony by the plaintiff were false and made with intent to defraud the defendant, and therefore constituted a violation of the above-quoted provisions in the policies. Such provisions in a policy cover cases of fraudulent misrepresentations of material facts and circumstances made by the insured to the insurer, such as might affect its action in respect to the issuance of a policy or settlement adjustment of the claim of the insured. It must appear that these false statements were made wilfully and intentionally for the purpose of defrauding the insurer. Such a clause in the policy would not cover misstatements or exaggerated claims of loss or perjury in connection therewith, committed by the insured during the trial. Neither would the misstatement by the insured in his sworn statement to the company, made shortly after the fire, as to the value of some of the property destroyed, be covered by such a condition, unless it was shown that these misstatements were wilfully and intentionally made for the purpose of defrauding the insurer. See *Phenix Insurance Co.* v. *Hart,* 112 *Ga.* 765 (38 S. E. 67); *Watertown*

*Fire Insurance Co.* v. *Grehan,* 74 *Ga.* 642, 656; *Phenix Insurance Co.* v. *Jones,* 16 *Ga. App.* 261 (85 S. E. 206); Claflin *v.* Commonwealth Insurance Co., 110 U. S. 81 (3 Sup. Ct. 507, 28 L. ed. 76); *Goldberg* v. *Provident Washington Insurance Co.,* 144 *Ga.* 783 (87 S. E. 1077). In Insurance Companies *v.* Weides, 81 U. S. 375 (20 L. ed. 894), the Supreme Court of the United States held: "It is only fraudulent false swearing in furnishing the preliminary proofs, or in the examinations which the insurers have a right to require, that avoids the policies."

It does not appear that the alleged testimony before "a court commissioner" was testimony as to facts upon which the defendant was induced to act or might be induced to act. The suit was filed on November 19, 1938, and the testimony before the commissioner was, as alleged by the defendant, after the institution of the suit. So far as it appears from the defendant's answer as amended, this testimony before the commissioner was testimony in support of the plaintiff's suit, and was not testimony which was calculated to influence in any way the conduct of the defendant in issuing the policy or in settling or adjusting the claim or representations under oath made by the insured. However, as to the affidavit, which it is alleged was made on August 10, 1938, and received by the defendant on August 17, 1938, in which it is alleged that the plaintiff swore falsely as to the cost of the property alleged to have been destroyed by fire, with intent to defraud the defendant, the defendant's plea and answer set up a violation of this provision in the policy, and was sufficient against a general demurrer. The court erred in sustaining the demurrer to this portion of the plea and answer in so far as the defendant set up that the alleged false statements made by the plaintiff in the affidavit were falsely made with intent to defraud the defendant, and constituted a violation of the provisions of the policy. The plaintiff specially demurred to these allegations, on the grounds, among others, that it does not appear therefrom how or in what way the defendant was defrauded or attempted to be defrauded by the plaintiff by the alleged false statements in the affidavit or otherwise, that the cost of the property is not alleged, nor is it alleged what fact or thing in the alleged false statements in the affidavit was false, and that a copy of the affidavit containing such alleged false statements was not attached to the answer. The

plaintiff was entitled to the information sought to be elicited by these special demurrers; and this portion of the amendment to the answer is subject to the special demurrers.

■ There is no merit in the contention of the plaintiff that there are no proper exceptions pendente lite in this case. The defendant filed four amendments to its answer, and the plaintiff demurred thereto generally and specially. The exceptions pendente lite recite as follows: "At the April term of said court, before final judgment, the court sustained the plaintiff's demurrers to defendant's first, second, third, and fourth amendments; whereupon to each of said rulings the defendant then and there excepted and now excepts, and assigns the same as error, and prays that this its bill of exceptions pendente lite be certified as true and ordered placed on the record. This 5th day of May, 1939." The judge certified the exceptions pendente lite as true, allowed the same, and ordered such bill of exceptions, with his certificate, to be placed upon the record. A general assignment of error to the overruling or sustaining of a demurrer to a pleading is sufficient. Under the record the designation of the defendant's amendments in the pendente lite exceptions, and the recital therein that the court before final judgment at the April term sustained such demurrers, is not too vague and indefinite to present to this court the question as to whether or not the court erred in sustaining these demurrers. The pleadings and the demurrers are in the record, and are capable of identification. See Code, § 6-1307. The bill of exceptions pendente lite is neither improper nor insufficient because it does not appear when the demurrers referred to therein were sustained, or because there is no statement therein or in the certificate of the judge that such exceptions were presented or certified within the time required by law. "Exceptions tendered before the final judgment, for the mere purpose of being made a part of the record, shall be certified to be true by the judge, and ordered to be placed on the record. Such exceptions shall be tendered during the term. If, however, the court shall adjourn within less than 30 days from the date of the ruling complained of, such bills of exceptions pendente lite shall be tendered within 60 days from the date of the order, decision, or ruling complained of." Code, § 6-905. The bill of exceptions in this case recited that the demurrers were sustained at the April term of the court, and the bill

of exceptions was dated May 5, 1939, and was filed on May 6, 1939. It will be presumed that the April term referred to was the April term, 1939, and this is found true upon an examination of the record. This court will take judicial cognizance of the fact that the terms of Floyd superior court commence each year on the second Mondays in January, April, July, and October. See *Waller* v. *State,* 164 *Ga.* 128 (2) (138 S. E. 67). Therefore the April term, 1939, of Floyd superior court commenced on April 10, 1939, and the bill of exceptions was dated and filed on May 5 and 6, 1939, respectively, which was less than thirty days from the convening of the April term, 1939, of the court, and was necessarily within thirty days from the sustaining of these demurrers. While the judge's certificate to the bill of exceptions pendente lite was not dated, it will be presumed, in the absence of an affirmative showing to the contrary, that the judge certified the bill of exceptions between the time it was dated and the time it was filed in the office of the clerk. *Porter* v. *Holmes,* 122 *Ga.* 780 (50 S. E. 923); *Bailey & Carney Buggy Co.* v. *Guthrie,* 1 *Ga. App.* 350. Therefore the contention of the plaintiff that there is no proper bill of exceptions pendente lite is without merit. Error is properly assigned in the bill of exceptions. This court will consider the judgment sustaining the plaintiff's demurrers to the plea and answer as amended. While certain portions of the plea as amended were insufficient and the demurrers thereto were properly sustained, as hereinbefore set out, the court's order sustaining all of the demurrers to the plea as amended, in striking the plea as amended in its entirety, and in thereafter overruling the defendant's motion for a new trial, was error.

*Judgment reversed. Sutton and Felton, JJ., concur.*