**PEARL ASSUR. CO., Limited, v. SOUTHERN WOOD PRODUCTS CO.**

No. 14173.

United States Court of Appeals
Fifth Circuit.

Dec. 17, 1952.

Alex W. Smith, Atlanta, Ga., for appellant.

Thomas B. Branch, Jr., Atlanta, Ga., for appellee.

Before BORAH, STRUM, and RIVES, Circuit Judges.

BORAH, Circuit Judge.

This appeal is from a judgment which was entered by the court below on a jury verdict awarding plaintiff the face amount of a policy of fire insurance plus a statutory penalty. The policy sued on was issued to Southern Wood Products Company by Pearl Assurance Company, Ltd. on August 1, 1950 and it covered insured's place of business which, on April 21, 1951, was destroyed by fire.

The appellant insurance company contends that the policy was rendered invalid by the acts of the appellee subsequent to its issuance in converting the insured premises from what the policy describes as a warehouse and office building into a plywood manufacturing plant. Claiming that the undisputed evidence shows that the hazard of fire was increased by the changes in the insured building and in the use to which the property was applied and that these changes were made without appellant's knowledge or consent but with the full knowledge of the insured, appellant as grounds for reversal is here insisting that the contract of insurance is void under Section 56–823 of the Code of Georgia of 1933, and under a policy provision releasing the insurer from liability while the hazard is increased, and there has been no express waiver in writing of such provision.[1]

Two questions are here pertinent. First, whether the appellant is correct in insisting that the record contains no evidence that at the time when the policy was issued the insurer or its agents either knew of or consented to the aforementioned changes and the hazard arising therefrom, and in consequence then waived[2] the defense of the increased hazard. Second, whether, as the appellant contends, the record is devoid of evidence to justify the imposition of the statutory penalty applicable under Georgia law[3] to an underwriter refusing in bad faith to pay a loss.

The appellee, on the other hand, contends that the record affords ample proof

---

1. The statute provides that "Any change in the property or the use to which it is applied, without the consent of the insurer, whereby the risk shall be increased, shall void the policy." The policy states that "Unless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured."

2. Under Georgia law, the authority of an insurance agent to waive conditions of the policy is confined to those conditions which enter into the validity of the contract at its inception. Mechanics, etc., Insurance Co. v. Mutual Real Estate, etc., Association, 98 Ga. 262, 266, 25 S.E. 457; Johnson v. Aetna Insurance Company, 123 Ga. 404, 51 S.E. 339.

3. Section 56–706 of the Code of Georgia of 1933 provides that in all cases when a loss shall occur and an insurance company doing business in the State shall refuse to pay the same within 60 days after demand, it shall be liable to pay the policy holder, in addition to the loss, not more than 25 per cent on the liability of the company, with attorney's fees, provided that it shall be made to appear to the jury that the refusal of the company was in bad faith.

that the insurer knew when the policy was issued that the assured was operating a number of woodworking machines in the warehouse, and consequently has no standing to complain that the hazard was thereafter increased by the installation of additional machines of the same general nature. In an effort to sustain the verdict assessing a penalty against the appellant for having refused to pay the loss, the appellee relies solely upon the failure of the appellant to establish its defenses in the court below, asserting that such failure justified the jury in inferring that the refusal to pay the claim was so frivolous and unfounded in law and fact as to amount to bad faith.

When the policy was issued on August 1, 1950, the insured property was being used to store plywood in connection with the assured's business as a jobber of that material. At that time, the warehouse was a fireproof structure with an all-steel roof, a concrete floor, and concrete block walls. A loading platform was located at the rear of the property and along one side there was a "drive" or paved area over which the roof extended to form an open shed. Certain machines considered indispensable in the business of jobbing plywood were kept on the premises, viz., a portable power saw, a portable sander, a large sanding machine, a table rip saw, and a gasoline lift truck.

In the latter part of August and early September, 1950, the loading platform was covered with an all-metal roof and was enclosed with wooden walls. Thereafter, in December, the building was enlarged by enclosing an area in front of it with concrete block walls and with a roof which was made of steel trusses, covered with plywood decking and an outer layer of metal. In the early part of 1951, the "drive" or open shed was enclosed with plywood siding, and in the area so enclosed, a wooden storage balcony or platform was built. Between December, 1950, and April, 1951, a number of plywood manufacturing machines of various types were installed,[4] and, in connection with the installation of such machinery, a blower system was added to collect shavings and sawdust. A wood-burning boiler was also installed in the building. The overall purpose of such changes was to render additional service to the assured's customers by making it possible to manufacture certain pieces of plywood to order.

The only testimony which could conceivably bear on the question of the appellant's knowledge of the aforesaid changes is that concerning several visits which were made to the warehouse by O. A. Dunlap prior to the issuance of the policy. Dunlap was a Vice-President of the appellant's agent, the B. M. Grant Company. On such visits he was acting for the New York Life Insurance Company, a third party not here involved, and the business was then being carried on in a building adjacent to the premises herein involved. E. B. Branch, the principal officer of the appellee, testified that Dunlap had walked through the said former place of business and was familiar with the operations being conducted therein. However, the record does not show that Dunlap actually knew what machines were being used in connection with the warehousing and jobbing of plywood, which was the only operation then being conducted by the assured, or that Dunlap ever visited the business after it was moved to the new location. On the basis of these facts, the assured contends that the jury was correctly charged with the duty of considering whether the insurer had acquired knowledge or notice prior to August 1, 1950 as to the use and occupancy of the insured premises including the use of any items of machinery in connection with the business, and, on the basis of the knowledge so acquired as to the general nature of the business, waived the right to interpose the defense of increased hazard. We do not at all agree.

4. The machines were a "clipper" or machine for cutting wood veneers, two machines for mixing cold glue, a glue spreader, a "tapeless splicer", described as a machine for splicing veneers, a veneer jointer, a belt sanding machine, a machine for splicing veneers with tape, a hydraulic press, a rip saw and three trim saws.

From the facts in evidence, we think it plain that there was no basis for an inference that when the appellant issued its policy on August 1, 1950 it intended to waive the provision relieving it from liability from loss occurring while the hazard was increased, absent its written consent. Even if it had then been aware that several machines were being used for woodworking operations required in the business of warehousing plywood, and had consented to their presence and use for such limited purpose, the insurer would not thereby have waived the right to invoke the policy provision with respect to the manufacturing machines, blower system, boiler, and other additions afterwards placed in the building. Furthermore, Dunlap's supposed knowledge could have had no bearing whatever upon the insurer's right to object to the act of the assured in changing the building itself from a fireproof structure to one which was partially roofed and walled with wood—a fact wholly unknown to the appellant or its agents at the time of the issuance of the policy. It is, consequently, clear on this record that the trial judge erred in submitting the issue of waiver to the jury.

Our holding that the appellant had a valid defense effectively disposes of the related question of the insurer's bad faith. Since the case must be retried, and the evidence may be different, we see no need to consider the other error assigned.

Reversed and remanded.