**PEARL ASSURANCE COMPANY, Limited,**

v.

**SOUTHERN WOOD PRODUCTS CO.**

**No. 14925.**

United States Court of Appeals Fifth Circuit.

Oct. 22, 1954.

Rehearing Denied Dec. 2, 1954.

See 217 F.2d 234.

Alex W. Smith, Atlanta, Ga., Smith, Field, Doremus & Ringel, Atlanta, Ga., Alex W. Smith, Jr., Atlanta, Ga., of counsel, for appellant.

Thomas B. Branch, Jr., Atlanta, Ga., James A. Branch, Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

RIVES, Circuit Judge.

█ Consistently the appellant has claimed not to be liable under its policy of fire insurance because of an increase of hazard after the policy was issued.[1] On a former appeal, 5 Cir., 200 F.2d 898, a judgment in favor of the appellee insured was reversed on a holding that the evidence did not warrant submission to the jury of the issue of waiver of the defense of increased hazard. On a second trial, instead of confessing and avoiding, the insured met the issue by a direct traverse, denying that the hazard was increased within the meaning of the policy provisions. Again the verdict and judgment were for the plaintiff insured, and appeal followed.

█ Appellant's first insistence is that the district court erred in excluding the testimony on cross-examination of E. B. Branch, sole proprietor of the plaintiff Company, as to indebtedness incurred in the purchase of woodworking machinery. We agree with the observation of the district court to appellant's counsel:

"But I do not see, since there is no contention made this fire was not unintentional, I cannot see whether the insured owed, or does not owe for that machinery, has one thing in the world to do with the amount of risk in there so far as the insurance company is concerned, and you have not pointed out to me yet how the changes in the physical risk, how does it affect the risk of your client here, as to whether it is paid or not. Just make that statement."

No satisfactory response was forthcoming. In our opinion, therefore, the court did not err in excluding the evidence of indebtedness.

█ Appellant's second and main contention is that the uncontradicted evidence establishes its plea of increase of hazard, and hence that the district court erred in not sustaining its motion for a directed verdict, and thereafter in not sustaining its motion for judgment notwithstanding the verdict. The appellant recognizes that, ordinarily, the issue as to whether or not there has been an increase of hazard depends upon questions of fact to be determined by the jury.[2] It insists, however, that in this case there is no real issue as to what the facts are, and, hence, that the determination of the issue becomes a matter of law.

The question is one of the net effect, increase of hazard vel non, ensuing from the combined causes both of the changes in and additions to the insured building, and of the changes in the use and occu-

---

1. The policy provides that:
"Unless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; * * *"
Section 56-823 of the Georgia Code of 1933 provides that:
"Any change in the property or the use to which it is applied, without the consent of the insurer, whereby the risk shall be increased, shall void the policy."
Under the Georgia law the policy must be considered as if this Code Section was written therein. See American Alliance Insurance Co. v. Pyle, 62 Ga.App. 156–161, 8 S.E.2d 154.

2. American Alliance Insurance Co. v. Pyle, 62 Ga.App. 162, 8 S.E.2d 154; St. Paul Fire & Marine Ins. Co. v. Bachmann, 285 U.S. 112, 52 S.Ct. 270, 76 L. Ed. 648; Centennial Ins. Co. v. Ramsey, 5 Cir., 193 F.2d 640; Royal Exch. Assur. of London v. Thrower, 5 Cir., 246 F. 768, 772; Perry County Insurance Co. v. Stewart, 19 Pa. 45 (Supreme Court of Pennsylvania); Stetson v. Massachusetts Mutual Fire Ins. Co., 4 Mass. 330, 3 Am.Dec. 217, 221; Curry v. Commonwealth Ins. Co., 10 Pick. 535 (Supreme Judicial Court of Mass.); Adair v. Southern Mutual Ins. Co., 107 Ga. 297, 33 S.E. 78, 45 L.R.A. 204.

pancy of the building. There was evidence for the plaintiff insured that at the time of the issuance of the policy the building was used as a warehouse for plywood in which some machines were in use, a hydraulic press, a veneer and sanding machine, a smaller sanding machine, a Walker ripsaw, and a skill saw, the use of which created sawdust, shavings and scraps; and that at such time no safety devices were provided to eliminate this combustible material. The plaintiff testified:

"Q. All right. Now, after all of this machinery was introduced in the building, and installed, did you have more shavings or less shavings than you had at the time the policy was issued? A. Well, we had much less, we had practically no accumulation of any waste at all, due to the fact that the blower system which was installed, worked directly from the machines that did any cutting at all, and was moved in such a manner that the waste went through the blower and into the proper container, rather than on the floor, or in the surrounding area of the machine.

\* \* \* \* \* \*

"Q. In your opinion did any of the changes you made there increase any hazard of fire? A. Not in my opinion at all, we did everything humanly possible to avoid fire through every possible safety measure. We had fire extinguishers, we had a night watchman, we had proper inspection according to the fire underwriters and the boiler system also was strictly approved by the fire underwriters as being in proper condition. We maintained an extremely clean operation, I think you will find by their report that it was an excellent report, all of the factors involving any hazard whatsoever we thought were properly taken care of.

"Q. Are you familiar personally with the machinery that was installed there? A. Yes, sir.

"Q. Do you know enough about machinery from your education to be personally familiar with the proper way to install that sort of machinery? A. I believe so, yes.

"Q. Was it properly installed? A. It certainly was, in every degree. We had not only the electrical installations, we had the factory men themselves come down and properly check each machine and see that everything was in perfect order.

"Q. Did they have any safety devices? A. Every machine had three safety switches. In other words you had the original or main cut-off switch, then you had a panel board containing a master switch, and then the switch on the machine which gave you three safety measures. One of them was an automatic device that would automatically cut off the machinery through any overheating or any other thing that might happen to the machine.

"Q. There was some mention here of building a wall of plywood near the driveway and before that partition was built, what was kept in the driveway? A. We normally kept an average of three carloads of material stored in the areaway there, that type of material such as concrete form plywood, and waterproof plywood that could be exposed on that side, an approximate value of around fifteen to twenty thousand dollars worth of stuff was kept in that alley way continuously.

"Q. In other words before the wall was built up this way, upright, you actually had plywood stored? A. All the way up.

"Q. Up to the ceiling? A. All the way up to and within two feet of the ceiling."

The witnesses Branch, Hopkins, Paschal and Tanner, each qualified by experience, testified to the effect that the machinery was properly installed and

had safety devices which not only did not increase but actually decreased the hazard.

■■ It was for the jury to determine whether it would believe the evidence for the plaintiff or that offered by the defendant. On motion for directed verdict or for judgment notwithstanding the verdict, the evidence must be viewed in its light most favorable to the party against whom the motion is directed.[3] So viewed, the motions were properly denied. The judgment is therefore

Affirmed.

---

3. Lavender v. Kurn, 327 U.S. 645, 652, 66 S.Ct. 740, 90 L.Ed. 916.