28288. SUPERIOR FIRE INSURANCE COMPANY *v.* PETERS.

DECIDED JULY 11, 1940.

*MacDougald, Troutman & Arkwright, Dudley Cook, Roberts & Roberts,* for plaintiff in error. *H. O. Godwin,* contra.

STEPHENS, P. J. (After stating the foregoing facts.)

1. This is a suit on a fire-insurance policy to recover for the loss of a barn and its contents by fire. The defendant claims that the policy is void because of the existence of other and additional insurance coverage with another insurance company on the insured barn in violation of the provisions of the policy. The existence of this other and additional insurance coverage on the insured barn is unquestioned. However, the undisputed evidence was to the effect that at the time of the issuance and delivery of the policy, the agent of the company which issued the policy had actual knowledge of the existence of such other and additional insurance. "When the agent through whom a fire-insurance company issued a policy knew at the time of delivering it and receiving the premium thereon that the policyholder then had other insurance outstanding on the insured property . . the company was precluded from setting up, in defense to an action on the policy, that under its terms it was void because of the outstanding insurance." *Atlantic Mutual Fire Insurance Co.* v. *Laney,* 38 *Ga. App.* 1 (142 S. E. 571) ; *Insurance Company of North America* v. *DeLoach,* 3 *Ga. App.* 807 (61 S. E. 406).

The plaintiff testified, that before the issuance and delivery of the policy, Mr. Duval, the local agent of the insurance company through whom the policy sued on was issued and delivered, asked him if he had insurance on this barn; that the plaintiff informed Mr. Duval that he had $200 on the barn and $100 on the contents thereof; that this agent stated that this was not enough insurance; that the plaintiff replied that he would like to obtain additional insurance, and that this agent wrote the additional insurance on the barn and contents. The plaintiff further testified that at the time he took out the insurance with Mr. Duval he went to his office and Mr. Duval asked him about writing some insurance; that when the plaintiff took the insurance he told this agent of the

existence and the amount of the prior insurance on the property; the plaintiff told this agent that when such insurance expired he would place all of his insurance business with this agent, and that the agent fully understood the matter.

G. M. Duval, the agent of the insurance company, testified that at the time the policy was written he knew that the plaintiff was carrying other insurance with some other company on the property, and that when the plaintiff came to his office to get him to write the policy sued on the plaintiff informed him of the existence of the other insurance, but stated that he wanted the agent to carry all of his insurance. Duval further testified that he did not remember the date, but as well as he could remember the above conversation occurred in July or August, and that when he delivered the policy to the plaintiff he did not ask him whether he had canceled the prior policy or not. This agent further testified as follows: "At the time I wrote this policy I knew he had other insurance. Of course, I assumed he canceled the other policy or [it] had expired. When I discussed insurance with him he told me he had additional insurance, and he had not told me he had canceled the insurance. He told me he wanted me to write his entire line." The son of Mr. Duval testified to the above facts. This witness testified that the plaintiff stated that he had the prior insurance but that he wanted the father of the witness to "rewrite his whole insurance," that he was going to cancel the prior policy "when it run out," and that this conversation took place in the office of the agent around July or August. The policy sued on was written and delivered in September of the same year. The evidence was that the prior insurance became effective on June 2, 1937, and was in effect at the time of the fire in September of that year.

It appears, therefore, that a finding by the jury was authorized, if not demanded, to the effect that the defendant insurance company, through its local agent, and the agent through whom the policy sued on was written and delivered to the plaintiff, had actual knowledge of the existence of the other insurance on the property destroyed by the fire and insured under the policy sued on. The defendant insurance company will not be heard to insist upon a forfeiture or avoidance of the policy sued on because of the existence of other insurance covering the property insured in violation

of the terms of the policy. The fact that the agent assumed that the other insurance had been canceled, or had expired at the time of the issuance and delivery of the policy sued on, does not alter the situation. No inquiry was made of the plaintiff as to whether the prior insurance had expired or the policy canceled, and there was no untrue statement by the plaintiff relative thereto. Nor was there any conduct upon his part tending to obviate the effect of such actual knowledge on the part of the defendant insurance company, through its agent Duval, at the time the policy was issued and delivered. Under the facts of this case, it makes no difference whether the conversation between the plaintiff and the agent occurred in July or August, or whether it occurred at the time the policy was issued and delivered. Whether there was an intentional waiver by the defendant insurance company of the provisions of the policy as to the existence of other insurance or not, the jury were authorized to find that "the agent of the company at the time of issuing the policy in fact knew of the existence of the prior insurance upon the property." *Swain* v. *Macon Fire Insurance Co.*, 102 *Ga.* 96 (29 S. E. 147); *Liverpool & London & Globe Insurance Co.* v. *Hughes,* 145 *Ga.* 716 (89 S. E. 817). See also *Williams* v. *Atlas Assurance Co.,* 22 *Ga. App.* 661 (97 S. E. 91).

While the plaintiff stated that he wished the agent to carry all his insurance business, it does not appear that the plaintiff intended, or so informed the agent, to cancel all other insurance policies so as to give his business to the agent. It is a matter of common knowledge that fire-insurance policies are generally issued for a term of at least one year. It is reasonable to suppose that the plaintiff intended, and that the agent so understood, upon expiration of policies held by him in other insurance companies, to obtain policies in lieu thereof through this agent. In fact, the son of the agent testified that the plaintiff told his father that "he was going to cancel" the other insurance "when it run out." The son further testified, "He told him he had other insurance on the property and he also told my father he was going to renew [?] these other policies outstanding at their expiration." It is reasonable to infer from the other testimony of the plaintiff, of the agent, and of this witness, that the witness meant that the plaintiff was going to renew such policies with his father upon their expiration;

that is, by taking out policies through the agent Duval, covering the property on which he had insurance with other companies. It is true that the agent testified that when he issued and delivered the policies sued on to the plaintiff, he "assumed" that the plaintiff had "canceled the other policies" or that such other policies "had expired;" this witness also testified that, "At the time the policy was written I knew Mr. Peters was carrying other insurance with some other company on this same property," and that "when he came in the office to get me to write this policy . . he told me he had insurance but he wanted me to carry it all;" and that is all the plaintiff told him. This court is not unaware of the statement in 2 Couch's Cyc. Ins. Law, 1683, § 533, that, "It is not an agent's duty to ascertain the fact as to prior insurance, and his assumption that such insurance didn't exist does not bind his principal." However, under the facts in this case this principle was not involved, and what we now rule does not controvert that statement. What we do hold, and this fact is fully borne out by the evidence, if not demanded therefrom, is that the general local agent of the defendant insurance company, through whom the policy sued on was issued and delivered by the insurer to the insured, had actual knowledge of the existence of this other insurance covering the property insured under the policy sued on at the time of its issuance and delivery to the insured by its agent, and this being so, the verdict for the plaintiff can not be set aside on the theory that the policy was void on account of a violation of the provision of the policy relative to the existence of other insurance.

2. There is no merit in the contention of the defendant insurance company that the trial judge erred in admitting in evidence the sworn proof of loss because the plaintiff had in his testimony repudiated such written statement as a sworn proof of loss. Neither is there any merit in the contention urged by the company that the verdict for the plaintiff was therefore unauthorized, and a nonsuit should have been granted upon its motion because it did not appear that the plaintiff had complied with the requirements of the policy as to the furnishing of a due proof of loss, which was a condition precedent.

It appeared from the signed written statement furnished to the defendant that the sound value and loss of the contents of the barn was $162.40. This included four certain bales of cotton or seed.

In the petition the plaintiff alleged that he furnished the information to the adjuster who, immediately after the fire, was sent by the defendant company to the plaintiff's premises where the fire occurred, from which information the proof of loss was prepared by this adjuster; that after doing this and after he had signed the proof of loss prepared by the adjuster, the plaintiff discovered that he was mistaken in the information given to the adjuster in that four certain bales of cotton or seed which he had supposed were in the barn at the time of the fire and were destroyed, were not in the barn at that time, and that he immediately notified the defendant of this mistake and instructed it to lessen the value placed on the contents of the barn lost in the fire, as stated in the proof of loss, accordingly. The plaintiff alleged that he otherwise complied with the requirements of the policy as to the furnishing of proof of loss. The defendant alleged in an amendment to its answer that the plaintiff had sworn falsely in the proof of loss furnished it, in that there was in existence at the time of the fire other insurance on the property insured, and in that the plaintiff claimed therein a number of bales of cotton which were not in the barn at the time of the fire, and that for these reasons the policy was void. The plaintiff's testimony as to the signing of the proof of loss was confusing, and it was apparent that he was somewhat disconcerted, possibly because of the fact that there were untrue statements in such proof furnished to the defendant. However, the reasonable inference from his testimony is that the plaintiff furnished the information to the defendant's adjuster from which the latter prepared the proof of loss, and that the adjuster requested the plaintiff to sign a blank proof and later filled it in from this information. Therefore, the jury were authorized to find that the proof of loss, as signed by the plaintiff and as prepared by the defendant's adjuster, was accepted by the defendant insurance company and retained by it without objection. In fact, it was not until the plaintiff sought to introduce, in response to a notice to produce, such proof in evidence that the defendant complained thereof and objected to its admission on the ground that the plaintiff had, by his testimony above referred to, repudiated the proof of loss in that he had testified that he did not swear to the proof furnished and did not sign the instrument with certain figures thereon. The defendant thereupon claimed that the plain-

tiff had not furnished it with a sworn proof of loss in compliance with the requirements of the policy. The evidence shows that the plaintiff did not intentionally falsely swear in the proof furnished so as to work a forfeiture of the policy. See *Phenix Ins. Co.* v. *Jones,* 16 *Ga. App.* 261 (85 S. E. 206). The plaintiff insured, upon discovering the mistake in the proof as to the four bales of cotton or seed, immediately notified the defendant thereof, and his explanation of this mistake and how it occurred is reasonable and was accepted by the jury.

It is also contended by the defendant that the plaintiff was guilty of false swearing in that he stated in the proof of loss that he did not have insurance covering a part of the property insured under the policy sued on, and that this voided the policy. It is undisputed that the plaintiff had other insurance at the time the policy sued on was written and delivered to him, of which the local agent of the defendant had actual knowledge at the time, and that this insurance continued in force and effect until the fire. Such policy of other insurance was written in June, 1937, and the fire was in November of that year. The jury were authorized to find from the testimony that the defendant company had knowledge of the other insurance, not only at the time of the issuance and delivery of the policy, but knew that this insurance had not expired at the time of the fire. The evidence tended to show that the plaintiff had stated to the local agent of the defendant that he had other insurance on the property, and that upon its expiration he desired this agent to write all of his insurance. The jury were authorized to find that there was an understanding of the parties that the policy of insurance which the plaintiff had upon the insured property at the time the policy sued on was issued and delivered would be retained by the plaintiff until it expired, and that the plaintiff would thereupon permit this agent of the defendant to write his entire line of insurance, and that it was upon this understanding between them that the policy sued on was written. In these circumstances the defendant insurance company should not be permitted to insist upon a forfeiture of the policy sued on because of the existence of this other insurance at the time of the fire. The evidence did not show that the plaintiff was by this fire collecting far more than the property destroyed by fire was worth. Furthermore, the plaintiff testified that he did not swear to the

proof of loss submitted, and that the proof was filled out by the adjuster of the defendant, and that it was in blank when the plaintiff signed it at the request of this agent of the defendant, and delivered it to him. The evidence was to the effect that the defendant knew of this other insurance, and that it knew that the plaintiff intended to retain such other insurance until the particular policy expired, and with this knowledge the defendant issued and delivered the policy, and also accepted from its agent, the insurance adjuster, the proof of loss submitted containing the incorrect statement as to the existence of other insurance at the time of the fire. Although a policy contains a provision that it shall be void in case of fraud or false swearing by the insured touching any matter relating to the insurance or the subject-matter thereof, whether before or after the loss, a false statement in a proof of loss which was not made to deceive and which could not possibly have injured the insurer, can not affect its liability. *Pooser* v. *Norwich Union Fire Ins. Co.,* 51 *Ga. App.* 962 (182 S. E. 44). It has been held that misstatements in the sworn proof of loss submitted to the insurer after the fire would not preclude a recovery where it did not appear that they were wilfully and intentionally made to defraud the insurer. It does not appear as a matter of law that the policy sued on was void because of intentional false statements made for the purpose of deceiving and defrauding the defendant, or that the plaintiff made any false statement which had the effect of deceiving or injuring the defendant.

The special assignments of error insisted upon, in view of what is held in the foregoing opinion, do not show error. The verdict for the plaintiff was authorized by the evidence, and the judge did not err in overruling the motion for new trial.

> *Judgment affirmed.* *Sutton and Felton, JJ., concur.*