James B. WOODS, Sr., Plaintiff-Appellant,

v.

INDEPENDENT FIRE INSURANCE COMPANY, Defendant-Appellee.

No. 83–8656.

United States Court of Appeals, Eleventh Circuit.

Jan. 8, 1985.

Rehearing and Rehearing En Banc Denied Feb. 22, 1985.

Susan W. Cox, Francis W. Allen, Statesboro, Ga., for plaintiff-appellant.

Bobby Jones, Metter, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, CLARK, Circuit Judge, and THOMAS *, District Judge.

GODBOLD, Chief Judge:

This is a suit over fire insurance coverage. The district court granted summary judgment for the insurer, holding that coverage was voided because of a material misrepresentation by the insured in a sworn proof of loss. We affirm.

On January 17, 1980, plaintiff secured a policy of insurance covering his single-family dwelling in Brooklet, Georgia. On July 9, 1980, he conveyed the property to his mother in fee simple, because he was having marital difficulties and wanted to prevent his wife from making any claim against the house in possible divorce proceedings. Woods continued to live in the house and continued to pay taxes on it and to pay the insurance premiums. His furniture and personal belongings remained in the house. The mother never lived in the house. The policy was renewed February 20, 1981, without Woods disclosing the transfer of title. On January 15, 1982, two days before the policy was to expire, the house was destroyed by fire.

The policy itself required Woods, after a loss, to set forth the interest of himself and all others in the property, as well as any changes in title or occupancy during the term of the policy.

Woods completed a sworn proof of loss form. Under the heading "Title and Inter-

---

* Honorable Daniel Holcombe Thomas, U.S. District Judge for the Southern District of Alabama, sitting by designation.

est" he stated that his interest in the property at the time of loss was 100%. He stated that no other person had any interest in the property or encumbrance thereon and since the policy had been issued there had been no assignment of the property or change in the interest, use, occupancy, location, or exposure.

After receiving the proof of loss, the insurer conducted an investigation and found that the property had been conveyed in fee simple to the mother. The insurer denied coverage on the grounds that Woods had no insurable interest in the property and that he had violated the condition of the policy providing: "We do not provide coverage for any insured who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance."

The district court granted summary judgment to the insurer, holding that the misrepresentation was material as a matter of law and that it voided the coverage. The court did not decide whether Woods did or did not have an insurable interest.

Under Georgia law "[i]t is only fraudulent false swearing, in furnishing the preliminary proof or in the examinations which the insurers have a right to require, that avoids the policies." *American Alliance Insurance Co. v. Pyle*, 62 Ga.App. 156, 165, 8 S.E.2d 154, 160 (1940). *American Alliance* cited and relied upon *Claflin v. Commonwealth Insurance Co.*, 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76 (1884). In that case a merchant represented that he owned certain goods when in fact he did not. The Court first discussed the object of the proof of loss:

> The object of the provisions in the policies of insurance, requiring the assured to submit himself to an examination under oath, to be reduced to writing, was to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts; material to their rights, to enable them to decide upon their obligations, and to protect them against false claims. And every interrogatory that was relevant and pertinent in such an examination was material, in the sense that a true answer to it was of the substance of the obligation of the assured. A false answer as to any matter of fact material to the inquiry, knowingly and wilfully made, with intent to deceive the insurer, would be fraudulent. If it accomplished its result, it would be a fraud effected; if it failed, it would be a fraud attempted. And if the matter were material and the statement false, to the knowledge of the party making it, and wilfully made, the intention to deceive the insurer would be necessarily implied, for the law presumes every man to intend the natural consequences of his acts. No one can be permitted to say, in respect to his own statements upon a material matter, that he did not expect to be believed; and if they are knowingly false, and wilfully made, the fact that they are material is proof of an attempted fraud, because their materiality, in the eye of the law, consists in their tendency to influence the conduct of the party who has an interest in them, and to whom they are addressed.

*Id.* at 94–95, 3 S.Ct. at 515.

The Court further held that it was obvious that "it was material to show what title and interest Murphy had at the time of the loss in the property insured. If he had no insurable interest, that certainly would have been a defence [sic]." *Id.* at 94, 3 S.Ct. at 514.

> The fact whether Murphy had an insurable interest in the merchandise covered by the policy was directly in issue between the parties. By the terms of the contract he was bound to answer truly every question put to him that was relevant to that inquiry. His answer to every question pertinent to that point was material, and made so by contract, and because it was material as evidence; so that every false statement on that subject, knowingly made, was intended to deceive and was fraudulent.

*Id.* at 96, 3 S.Ct. at 516.

In *Pooser v. Norwich Union Fire Insurance Soc'y*, 51 Ga.App. 962, 182 S.E. 44

(1935), the insured made a false statement on the proof of loss indicating that she had conveyed the property away and had no interest in it. The insurer asserted that this false statement voided the policy under the false swearing provisions. The court held that this type of false statement against the insured's interest would not void the policy.

> It is important to note that the misstatement in the proof of loss was against Mrs. Pooser's interest. She made a statement which, if true, avoided the policy. The situation is quite different from what it would have been had she *failed to make* a statement of fact, which, existing, barred her right to recovery. That would have been an error in her interest (instead of against it), and presumably would have been made with fraudulent intent.

51 Ga.App. at 969, 182 S.E. at 48.

In the present case the false statement of Woods was in his interest. If not discovered it would have induced the insurer to pay the policy proceeds to him as owner. If discovered, and assuming coverage remained in effect, the insurance company could at least have interpleaded the proceeds or otherwise protected itself from possible claims by competing claimants. Moreover, the concealed transfer went directly to the issue of insurable interest. Absent an insurable interest Woods would not be covered. The conveyance to the mother was a crucial factor to the insurer in determining its rights and responsibilities under the policy as the Supreme Court pointed out in *Claflin.*

■ Woods concedes that the representation was false and that he knew it was. His contention to us is that the materiality of the misrepresentation was a question for the jury that could not be decided as a matter of law by the court on summary judgment. The district court properly determined materiality as a matter of law. "[M]ateriality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not differ on the question." *Long v. Insurance Co. of North Am.,* 670 F.2d 930, 934 (10th Cir. 1982). Reasonable minds cannot differ on

the materiality of the misrepresentation made here because it went to the core factor of insurable interest, which is not a mere nicety or a matter of administrative convenience. Insurable interest is a keystone of the concept of insurance, safeguarding the insurer against the risk that arises if one who will receive the monetary benefit from loss of the insured property (or life, as it may be) has no interest in the property not being destroyed. Woods's misrepresentation concealed from the insurer the existence of a possible defense of lack of insurable interest. Moreover, an insurer that negligently issues a policy to one without an insurable interest may, in some circumstances, be liable in tort for the proximate consequence of its negligence. *E.g., Liberty National Life Insurance Co. v. Weldon,* 267 Ala. 171, 100 So.2d 696 (1957). The district court did not decide, and we do not need to decide, whether under some theory of equity Woods had such an interest that he might slip by the insurable interest requirement. The insurer was entitled to raise insurable interest as a defense to coverage, and Woods's misrepresentation concealed the defense from the company. At a minimum the insurance company was entitled to be told the facts by Woods and to investigate before it paid the proceeds to one of two possible claimants.

■ Woods contends that he did not intend to defraud the insurer because his motive was to put the property beyond reach of his wife in divorce proceedings. *Claflin* rejects this argument. The Court held that the fraud was "not lessened because the motive that induced it was something in addition to the possible injury to them that it might work." *Claflin,* 110 U.S. at 97, 3 S.Ct. at 516.

■ Woods relies upon several Georgia cases that concern misrepresentations made in applications for insurance. They arise under O.C.G.A. § 33–24–7 (1982) (previously codified at Ga.Code Ann. § 56–2409 (1977)) which provides in part that "[m]isrepresentations ... [made in an application for insurance] shall not prevent a recovery under the policy or contract unless ... material either to the acceptance of the risk

or to the hazard assumed by the insurer...." This section represents the most recent codification of the Georgia legislature's long-standing concern that insurance contracts not be rendered void because of minor discrepancies made by the insured in his application for insurance. *See generally* Note, *Misrepresentations and Nondisclosures in the Insurance Application,* 13 Ga.L.Rev. 876, 921–33 (1979).

■ Judicial response to the legislative concern is reflected in the Georgia courts' construction of the materiality requirement. Rather than inquire into what a particular insurer would have done had it known of the insured's misrepresentation—an inquiry easily resolved in the insurer's favor—Georgia courts employ a reasonableness test, an objective standard of conduct against which to measure the effect of the insured's false declarations. *See, e.g., Sentry Indemnity Co. v. Brady,* 153 Ga. App. 168, 264 S.E.2d 702 (1980) (material misrepresentation is one that would influence a prudent insurer in deciding whether to accept risk); *see also Lee v. Metropolitan Life Insurance Co.,* 158 Ga. 517, 123 S.E. 737 (1924) (objective standard expressly adopted). Moreover, whether a misrepresentation is material because it would influence a prudent insurer's decision to insure is usually a jury question. *See, e.g., United Family Life Insurance Co. v. Shirley,* 242 Ga. 235, 248 S.E.2d 635 (1978); *Fidelity Bankers Life Insurance Co. v. Renew,* 121 Ga.App. 883, 176 S.E.2d 103 (1970).

■ O.C.G.A. § 33–24–7 (1982) and the caselaw construing it expressly refer to insurance applications. The statute represents the legislature's decision to extend a measure of protection to those who apply for insurance. The adoption of an objective standard—a type of standard traditionally applied by a jury to facts found by it—to define the prudent insurer and materiality is a judicial response to that legislative policy. Woods points us to no similar legislative or judicial recognition on behalf of insureds who file sworn proofs of loss. Moreover, Georgia caselaw stresses the insurer's compelling interest in and right to accuracy in the proof of loss. *See, e.g., American Alliance, supra.*

■ The district court properly held that Woods's misrepresentation was material as a matter of law and granted summary judgment for the insurer.

AFFIRMED.

CLARK, Circuit Judge, dissenting:

In deciding this case the majority has committed two errors. First, it has failed to recognize that: (1) only a false misrepresentation with the intent to defraud will void coverage; and (2) this issue should have been decided by a jury. Second, by placing undue emphasis on Woods' statements in his proof of loss, it has allowed it to outweigh an interrogation of Woods by the insurance company, while Woods was under oath. Because summary judgment was inappropriate under these circumstances, I must dissent.

The majority relies on *Claflin v. Commonwealth Ins. Co.,* 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76 (1884), and quotes the following statement: "The fact whether Murphy had an insurable interest in the merchandise covered by the policy was directly in issue between the parties." *Majority Opinion* at 1495. In *Claflin* the jury was allowed to decide this crucial issue after it had been fully litigated at trial. *See Claflin v. Commonwealth Ins. Co.,* 110 U.S. at 85, 3 S.Ct. at 513. Because the majority has permitted summary judgment to stand, Woods has not been given an adequate opportunity to develop the issue just quoted. As I shall demonstrate, the facts of this case disclose that Woods probably did have an insurable interest in the house, since the evidence indicated that he owned it at the time of the fire.[1] Foreclos-

---

1. In this respect, a closer review of the facts is warranted. Mrs. Clydie Woods, the mother of the plaintiff, stated that her son executed a deed conveying title to his home to her in July, 1980. She further stated:

Although I am the titular owner of Jim's house, I still consider Jim to be the true owner of the home. Jim has always lived in the home since he built it approximately twelve years ago. At the time of the fire, Jim

ing Woods' opportunity to litigate the issue merely because of a misstatement in a proof of loss is summary injustice at its worst.

In *Insurance Companies v. Weides,* 81 U.S. (14 Wall.) 375, 20 L.Ed. 894 (1871) the Supreme Court indicated that the issue of whether statements made by an insured are false and fraudulent misrepresentations are questions of fact upon which a jury should decide. The Court mentioned:

> It is true the policies stipulated that fraud or false swearing on the part of the assured should work a forfeiture of all claim under them. The false swearing referred to is such as may be in the submission of preliminary proofs of loss, or in the examination to which the assured agreed to submit. But it does not inevitably follow from the fact that there was a material discrepancy between the statements made by the plaintiffs under

> was living in the house. Jim has the right to live in the house for as long as he wants to live there. I am willing to deed the house back to Jim whenever he asks for it. The house contained Jim's furniture and belongings. Jim paid the taxes and the insurance on the house. I have never lived in the house, nor do I ever plan to live in the house. I own my own home, along with my husband, close to where Jim lived. I have never had any of my furniture or belongings in the house. *I have always considered the house to be Jim's house.* When the house burned, Jim was the one who suffered a loss, not me.

*Affidavit of Mrs. Clydie Woods, Record* at 00167–00169 (emphasis added). The plaintiff, Mr. Woods made similar comments. He stated:

> I had had such a horrible experience with my first divorce about property settlement, and the second wife, when she indicated that she wanted a divorce, the first thought in my mind was to *transfer the property to somebody's name that would transfer it right back to me on request—would deed it back to me at my request*—and that would be my mother, and would deter any efforts on her part or anybody else's part to try to claim any property settlement.

*Deposition of James B. Woods,* at 44 (emphasis added). He further stated:

> Q. Okay. Now, was the property in your mother's name for a year, a year and a half, or do you have any idea?
> A. Still is.
> Q. So, she's never deeded it back to you?
> A. I haven't requested it, and she hasn't deeded it.

oath in their proofs of loss, and their statements when testifying at the trial that the former were false, so as to justify the court in assuming it, and directing verdicts for the defendants. It is only fraudulent false swearing in furnishing the preliminary proofs, or in the examinations which the insurers have a right to require, that avoids the policies, *and it was for the jury to determine whether that swearing was false and fraudulent.*

*Id.* at 382–83 (emphasis added).

Similarly, in *American Ins. Co. v. Jass,* 22 F.2d 793 (5th Cir.1927), a fire had destroyed a warehouse located in Georgia. Claiming that the policy was void due to the submission of a false affidavit, the insurer declined to pay. The court stated:

> Regarding the affidavit of [the plaintiff], while it was in fact inaccurate, there was other evidence tending to show that he

> Q. So, the property has been deeded to her since whatever date it was, and no other conveyances have been made?
> A. No, sir.
> Q. Has anybody else had any ownership rights in the property since it was conveyed to her?
> A. No, sir.

*Id.* at 47.

It is clear from the comments of the plaintiff and his mother that a jury could have found that the plaintiff held the sole interest in the property due to either an ineffective delivery or acceptance. *Morris v. Johnson,* 219 Ga. 81, 132 S.E.2d 45, 52 (1963) ("[Here] the grantor had no intent to irretrievably surrender dominion of this deed and therefore an absolute delivery is negatived."); *Smith v. Smith,* 202 Ga. 759, 44 S.E.2d 486 (1947) ("delivery of a deed conveying real property is essential to its validity, and is complete only when the deed is accepted."); *Dobbs v. First Nat. Bank of Atlanta,* 65 Ga.App. 796, 16 S.E.2d 485, 487 (Ga.Ct.App.1941) ("Neither the manual possession of the deed nor the physical possession of the property—and in some cases no doubt the possession of both, is not conclusive as to delivery or vice versa."). Under Georgia law the jury is authorized to determine whether there has been a valid acceptance as well as a valid delivery. *See Smith v. Smith,* 202 Ga. 759, 44 S.E.2d 486, 487 (1947). Moreover, under Georgia law the question of whether there has been a valid delivery is a question of fact for the jury. *See Allen v. Bemis,* 193 Ga. 556, 19 S.E.2d 516, 520 (1942).

was simply mistaken and did not willfully swear falsely. Under the circumstances ... *it was not error to submit the case to the jury under proper instructions.* *Id.* at 794 (emphasis added). *See also Camden Fire Ins. Ass'n v. Penick,* 2 F.2d 964 (5th Cir.1924) ("We are of opinion that whether the claim was fraudulently or innocently made was a question peculiarly within the province of the jury.").

Thus, under our cases, the issue of whether the proof of loss was false and fraudulent should have been resolved by the jury. Cases interpreting Georgia law require a similar result. In *Casey Enterprises, Inc. v. American Hardware Mutual Insurance Co.,* 655 F.2d 598 (5th Cir. 1981) the court discussed Georgia's law respecting misstatements in proofs of loss. The court stated:

> Under Georgia law misstatements in a proof of loss will not form the basis for a defense against the insured unless the insurer shows that the misstatements were made fraudulently. The district court found no evidence in the record that any of the misstatements in the proof of loss were fraudulent .... Since ... there is no evidence that it contained fraudulent misstatements, the errors in the proof of loss cannot be a basis for voiding the policy.

*Id.* at 603. Similarly, in *American Alliance Ins. Co. v. Pyle,* 62 Ga.App. 156, 8 S.E.2d 154 (1940), which is a case cited by the majority, the court commented on misstatements in proofs of loss:

> It must appear that these false statements were made willfully and intentionally for the purpose of defrauding the insurer. Such a clause in the policy would not cover misstatements or exaggerated claims of loss or perjury in connection therewith committed by the insured during the trial. Neither would the misstatement by the insured in his sworn statement to the company made shortly after the fire as to the value of some of the property destroyed be covered by such a condition *unless it was shown that these misstatements were willfully and intentionally made for the purpose of defrauding the insurer.*

*Id.* 8 S.E.2d at 160. *See also Superior Fire Ins. Co. v. Peters,* 62 Ga.App. 823, 10 S.E.2d 94, 98 (1940) ("The evidence shows that the plaintiff did not intentionally falsely swear in the proof furnished so as to work a forfeiture of the policy.").

Even if the statement in the proof of loss was incorrect, the plaintiff had a right to correct the statement before the trial. As pointed out in note one, the insured answered all questions about the transaction between himself and his mother at the deposition. He indicated he had deeded the property to his mother and that there had been no re-conveyance. Thus, assuming that his statement in the proof of loss was inaccurate, he adequately corrected it at the deposition. The Supreme Court has found that an insured may correct a statement made in his proof of loss. *See Connecticut Mutual Life Insurance Company v. Schwenk,* 94 U.S. (4 Otto) 593, 596, 24 L.Ed. 294 (1876) ("He [the assured] may correct it, [the statement in the proof of loss] though not first at the trial."); *Insurance Company v. Newton,* 89 U.S. (22 Wall) 32, 36, 22 L.Ed. 793 (1874); *see also Southern States Life Insurance Co. v. Warnock,* 145 Ga. 791, 89 S.E. 843 (1916).

It is possible that Woods was not the owner of the property and that his statement in the proof of loss was material, false, and fraudulent. However, the cases instruct us that the *jury,* not the court, should have been permitted to decide these crucial issues. "Summary judgment should be entered *only* if 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'" *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1030 (5th Cir. Unit B 1982) (emphasis added). The court must not decide any factual issues in the record. Rather, where factual issues are present "the court must deny the motion and proceed to trial." *Id.* at 1031.

Because there were material factual issues that should have been fully developed at trial and decided by the jury, I must respectfully dissent.