[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12734

_____

D.C. Docket No. 0:18-cv-62093-UU


ALFREDO QUINTERO,

Plaintiff-Appellant,

versus

GEICO MARINE INSURANCE COMPANY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 22, 2020)

Before WILLIAM PRYOR, Chief Judge, HULL and MARCUS, Circuit Judges.

HULL, Circuit Judge:

This case involves a marine insurance policy insuring a boat owned by

Alfredo Quintero ("Quintero") and the federal maritime doctrine of uberrimae

fidei.  After the boat was stolen, the insurer, Geico Marine Insurance Company

("Geico"), denied coverage based on Quintero's misrepresentation that he was in

possession of the boat.  Quintero appeals the district court's grant of summary

judgment in favor of Geico and denial of his motion for partial summary judgment.

The issue is whether Quintero's misrepresentation voided his policy ab initio.

After careful review, and with the benefit of oral argument, we conclude it did and

affirm.

## I.  FACTS

### A.    Quintero's Policy

Initially, Quintero's 32-foot powerboat was covered by a Geico marine

insurance policy that ran from May 5, 2017, to May 5, 2018.  On March 13, 2018,

Geico sent Quintero a policy renewal package identifying changes to the policy's

terms and Quintero's required payment.

Geico's renewal package required a down payment of Quintero's annual

premium, or $776 of the premium total of $2580.  The package included this

urgent reminder: "Your coverage expires on 05/05/2018 at 12:01 AM Local Time.

Prevent a lapse in coverage by making your required payment promptly."  The

annual premium for the upcoming policy period had increased by 25 percent, and

Quintero's next payment of $776 was scheduled to be paid through Geico's

automatic-payment system.  The renewal policy stated that Geico would provide

2

coverage "during the policy period" on the condition that Quintero pay the premium and comply with all policy terms.

On May 4, 2018, Geico charged Quintero's credit card, but the charge was declined.  That same day, Quintero called Geico about the attempted charge and increased premium.  Quintero began the call by updating his address information. A customer service representative then explained that (1) Geico ordinarily debited renewal payments from the policyholder's card on file, (2) Quintero's card was declined, (3) he was thus automatically disenrolled from the automatic-payment system, and (4) he could either call in to make payments or put another card back on file.

When the Geico representative explained that rates had increased for everyone and why, Quintero complained that the 25 percent increase was "ludicrous."  He stated that if Geico was making a change, he was "making a change too," and that "it's not acceptable, that you're going to increase me 25 percent.  It's just not acceptable."  The representative said she could not reduce his premium, to which Quintero replied, "So you prefer losing a customer, okay.  I guess -- so you're going to lose me as a customer, with all my vehicles, because you want to increase me 25 percent."  Quintero asked to speak to a supervisor and was transferred, but the call went to voicemail.  Because Quintero had updated his

3

address information, Geico sent him a new endorsement reflecting the address change.

## B.    Non-Payment and Expiration

Quintero did not make the required renewal payment prior to the policy expiring on May 5, 2018.  On May 10, 2018, Geico sent Quintero a "Notice of Policy Expiration."  The Notice stated his policy expired on May 5, 2018, at 12:01 a.m., and that "all liability thereunder terminated on its expiration date."

## C.    Theft and Policy Reinstatement

On May 25, 2018, at 4:58 a.m.—as detailed in a later police report—a dark pickup truck pulled up to the driveway of Quintero's home, where the boat was stored, and towed the boat away along with its trailer.  A neighbor's surveillance camera, a block away, recorded the perpetrator's truck towing the boat away, and the Broward County Sheriff's Office later obtained the footage.

That same morning, at 7:28 a.m., Quintero called Geico to "pay [his] boat policy."  A customer service representative observed that "the policy was due the 5th of May," and asked Quintero if he was trying to reinstate it.  Quintero said yes and acted as if he was unaware of the lapse:

> [REPRESENTATIVE]: Okay, so it looks like the policy was due the 5th of May.  Are you trying to reinstate it?
>
> MR. QUINTERO: Yeah.  Well, I didn't know it was -- oh, it says here that . . . okay, yeah, I guess I'm -- they told me that I have to pay $700 or something like that, 700 and something dollars.

4

[REPRESENTATIVE]: The first payment is $776, that's right.

MR. QUINTERO: Yeah.  What are we . . .

[REPRESENTATIVE]: What are we, I'm sorry?

MR. QUINTERO: That I don't know why you guys -- it's only eight months, instead of like the cars are . . . okay.  It is what it is.  We have to have insurance, so . . . Something -- something happens out there, you know, you want to be insured, so . . .

The representative then asked these questions:

[REPRESENTATIVE]: I have to ask you some questions, then we can make a payment and reinstate the policy, okay?

MR. QUINTERO: Sure.

[REPRESENTATIVE]: First off, is the boat -- does the boat have any damage or is it -- has it been damaged?

MR. QUINTERO: No.  It's beautiful.

[REPRESENTATIVE]: Okay.  And is it sound and seaworthy?

MR. QUINTERO: Sound and seaworthy.  What it means?  It's in good condition?

[REPRESENTATIVE]: Mm-hmm.

MR. QUINTERO: Yeah, yeah, yeah.

[REPRESENTATIVE]: Okay.  And when was the last time you physically saw your boat?

MR. QUINTERO: Every day.  It's in my house.

The representative then took Quintero's credit card information and reenrolled him in the automatic-payment system. At one point, Quintero noted the declarations page he had received from Geico showed that his policy expired on May 5. At the end of the call, Quintero asked, "So the policy will be active right away, right? I just want to make sure that I'm not without insurance." The representative confirmed that with the payment, the policy was now reinstated as of May 5, 2018.

That same afternoon, at 2:43 p.m., Quintero reported his boat and trailer stolen to local police. At 6:28 p.m., he called Geico again, this time to make a claim for the stolen boat and trailer. During his call to the claims department, Quintero stated that he stored the boat at his home, "right in front of [his] driveway," and that he had last seen the boat around 11:30 p.m. to 12 a.m. the night before. He told Geico he discovered the boat was missing when his wife came home from work just after noon that day and asked him where the boat was. He had "assumed" the boat was still there when he went to work that morning, having to run to his truck due to heavy rain.

Geico investigated and took statements from Quintero and his wife. In July 2018, Geico informed Quintero it needed further information and was awaiting the final police report. Geico demanded that Quintero submit to an examination under oath. Quintero refused.

6

## II.  PROCEDURAL HISTORY

On July 31, 2018, Quintero filed this action in Florida state court, seeking a declaration that Geico breached the policy by failing to cover his boat loss.  Geico removed the case to federal court.

Geico then obtained a final report from the Broward County Sheriff's Office describing the video surveillance obtained from a neighboring residence a block away.  According to the report, the surveillance footage captured the boat being towed away just before 5 a.m. on May 25, 2018.  It showed two vehicles drive into the community where Quintero resided, and one—a dark pickup truck—tow away the boat minutes later.

Then, in a January 30, 2019 letter, Geico informed Quintero that: (1) it had completed its investigation; (2) it had denied coverage and rescinded the policy ab initio because Quintero was not in possession of the boat when he called to reinstate his expired marine insurance policy; and (3) Quintero's misrepresentations that the boat was in his possession and in good condition were material to its agreement to insure the vessel after the policy had previously expired and been non-renewed at his request.

Ultimately, the district court granted Geico's motion for summary judgment and denied Quintero's motion for partial summary judgment.  The court concluded that Quintero's misrepresentations concerning the status of the boat on May 25,

7

2018, voided the policy ab initio under the doctrine of uberrimae fidei because they were material to Geico's calculation of the risk of insuring the vessel. In addressing Quintero's contention that the policy was never cancelled or non-renewed, the court noted that "the Policy, the Notice of Policy Expiration, and the recorded telephone transcripts indicate that the previous policy's term expired on May 5, 2018." The court concluded that the policy was void ab initio under the uberrimae fidei doctrine "regardless of whether [it] was renewed, cancelled, or expired."

Later on, the district court denied Quintero's motion for relief under Federal Rules of Civil Procedure 59(e) and 60(b). This appeal followed.

### III.  STANDARD OF REVIEW

"We review de novo a district court's grant of summary judgment, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." Jurich v. Compass Marine, Inc., 764 F.3d 1302, 1304 (11th Cir. 2014). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995).

8

## IV.  DISCUSSION

Quintero argues the district court erred in applying the doctrine of uberrimae fidei because (1) his policy was not cancelled, non-renewed, or expired when he spoke to Geico the morning of May 25, 2018, (2) his coverage continued in full force without a lapse, and (3) his May 25 statements were not material to Geico's decision to insure his boat because Geico reinstated and backdated his policy and did not require a new underwriting process.

### A.    Expiration of the Policy

First, based on the record, we conclude that Quintero's initial policy, by its terms, expired on May 5, 2018, because Quintero did not pay the required premium for the new policy period.  In fact, Quintero's phone call on May 4 with Geico makes clear that Quintero understood that if he did not pay his new premium, Geico would not renew his policy for the May 5, 2018, to May 5, 2019 period.

Notably too, during the May 4 call, Quintero complained that the 25 percent premium increase was "ludicrous" and "not acceptable."  After this exchange, Quintero did not pay the installment amount due on May 5, 2018.  Accordingly, on May 10, 2018, Geico sent Quintero a Notice of Policy Expiration informing him that the policy had expired as of May 5, 2018, and "all liability thereunder

9

terminated on its expiration date." Therefore, Quintero's initial policy did not cover his boat loss that occurred on May 25, 2018.

Quintero argues that the initial policy was not cancelled or non-renewed, but that is irrelevant. His coverage already expired on May 5, 2018, so he did not have coverage when he called Geico on the morning of May 25, 2018.

Quintero also argues Geico's Jeffrey O'Keefe, an adjuster, inconsistently testified as to whether the policy was ever cancelled or expired. But the district court did not rely on O'Keefe's statements for the proposition that the policy expired. Rather, the district court noted that "the Policy, the Notice of Policy Expiration, and the recorded telephone transcripts indicate that the previous policy's term expired on May 5, 2018 and that Quintero called to reinstate his Policy on May 25, 2018 after the Vessel had been stolen."

Furthermore, O'Keefe clarified any confusion about cancellation and expiration. In his deposition, he repeatedly stated that the policy was not cancelled in May 2018; it expired. And in his supplemental affidavit, he stated that on May 5, 2018, "the subject policy expired and a Notice of Policy Expiration was mailed to Alfredo Quintero on May 10, 2018."

In any event, any initial imprecise statements by O'Keefe do not change the fact that the terms of Geico's policy conditioned renewal of coverage on payment of the premium, Quintero did not pay the premium, and the policy period expired

10

on May 5, 2018.  Indeed, the renewal package informed Quintero that coverage would expire on this date at 12:01 a.m. and included an urgent reminder to "[p]revent a lapse in coverage by making [the] required payment promptly."  As a result, when Quintero failed to pay his renewal premium, he received a Notice of Policy Expiration stating his policy had expired on May 5, 2018, at 12:01 a.m., and that "all liability thereunder terminated on its expiration date," making clear that coverage expired along with the policy.  Quintero's boat was thus uninsured between May 5, 2018, and when he first called Geico on May 25, 2018.  In other words, there was a lapse in coverage, and no policy was in force when Quintero called Geico on May 25.

## B.    Doctrine of <u>Uberrimae Fidei</u>

Even so, Quintero claims that he still had coverage on May 25 because Geico renewed and backdated the policy to run from May 5, 2018, Geico did not treat it as if it was issuing new coverage, and his statements were not material to the issuance of coverage.  In response, Geico contends that the renewal policy was void <u>ab initio</u> because Quintero made material misrepresentations in his May 25 call before Geico reinstated the policy.  Geico relies on the doctrine of <u>uberrimae fidei</u>, to which we turn.

Marine insurance contracts are governed by federal maritime law.  <u>Geico Marine Ins. Co. v. Shackleford</u>, 945 F.3d 1135, 1139 (11th Cir. 2019).  In the

11

absence of an established federal admiralty rule, we rely on state law.  Id.[1]  Here,

there is controlling federal maritime law.  Specifically, "[i]t is well-settled that the

marine insurance doctrine of <u>uberrimae fidei</u> is the controlling law of this circuit,"

<u>HIH Marine Servs., Inc. v. Fraser</u>, 211 F.3d 1359, 1362 (11th Cir. 2000), and is

"the controlling federal rule even in the face of contrary state authority," <u>Steelmet,</u>

<u>Inc. v. Caribe Towing Corp.</u>, 747 F.2d 689, 695 (11th Cir. 1984), <u>vacated in part</u>

<u>on other grounds</u>, 779 F.2d 1485 (11th Cir. 1986).  We first review the scope of the

doctrine and then why it applies here.

As to scope, the <u>uberrimae fidei</u> doctrine requires an insured to "fully and

voluntarily disclose to the insurer all facts material to a calculation of the insurance

risk," and "[t]he duty to disclose extends to those material facts not directly

inquired into by the insurer."  <u>HIH Marine</u>, 211 F.3d at 1362.  This disclosure

includes all material facts that are "within or ought to be within, the knowledge of

one party, and of which the other party has no actual or presumptive knowledge."

<u>Steelmet</u>, 747 F.2d at 695 (quoting <u>Gulfstream Cargo, Ltd. v. Reliance Ins. Co.,</u>

409 F.2d 974, 980 (5th Cir. 1969)); <u>see also</u> <u>HIH Marine</u>, 211 F.3d at 1363 ("[T]he

---

[1]Consistent with this rule, the choice-of-law provision in both Quintero's initial policy and renewal policy states that (1) the "policy is to be construed under United States federal admiralty law," and (2) "[i]n the absence of controlling United States federal admiralty law," the policy is to be "construed under the laws of the state" of the insured person, here Florida.

law has placed the burden of good faith disclosure with the person in the best position to know all the facts: the insured.").

This doctrine, which embodies the "highest degree of good faith," applies to marine insurance contracts because the insurance underwriter often cannot ensure the accuracy or sufficiency of the facts supplied by an insured "before the risk is accepted and the premium and conditions set." Steelmet, 747 F.2d at 695 (quotation marks omitted). Thus, the doctrine's central principle "is that the insured bears the burden of full and voluntary disclosure of facts material to the decision to insure." HIH Marine, 211 F.3d at 1263.

Further, under uberrimae fidei, an insured's material misrepresentation to an insurer renders a marine insurance policy void ab initio. See AIG Centennial Ins. Co. v. O'Neill, 782 F.3d 1296, 1303 (11th Cir. 2015). The policy is void even if the insured's misrepresentation was the result of "mistake, accident, or forgetfulness," or the insurer did not inquire about the particular material fact the insured failed to disclose. HIH Marine, 211 F.3d at 1362-63 (quotation marks omitted). We examine materiality from a reasonable insurer's perspective, asking whether a particular fact "could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk." Kilpatrick Marine Piling v. Fireman's Fund Ins. Co., 795 F.2d 940, 942-43 (11th Cir. 1986); see also AIG Centennial, 782 F.3d at 1304 (employing definition from Kilpatrick).

13

Here, Quintero is correct that the doctrine of uberrimae fidei applies only when an insurer issues a policy, not when a policy is already in full force. See HIH Marine, 211 F.3d at 1362-63 (requiring the disclosure of "all facts material to a calculation of the insurance risk" and stating that doctrine's central principle is "disclosure of facts material to the decision to insure"); Kilpatrick, 795 F.2d at 942-43 (describing material fact as one that could influence insurer "in determining whether he would accept the risk"); Steelmet, 747 F.2d at 695 (noting "highest degree of good faith" is required because insurer cannot otherwise ensure the accuracy of facts "before the risk is accepted" (quotation marks omitted)).

But as set forth above, Quintero's policy was not in full force on May 25 because it had expired on May 5, 2018. Although Quintero was not required to go through a new underwriting process, he was required to answer questions about the condition and possession of the boat in order for Geico to issue coverage by renewing the expired policy. Further, Quintero's misrepresentations concerning his possession of the boat during the May 25 phone call were material to Geico's calculation of the insurance risk in reinstating his policy, rendering the renewed policy void ab initio.

Moreover, when Geico renewed the policy, it issued an amended, new policy, even if it backdated coverage to the original policy's expiration date. Specifically, the cover page of the renewal package sent on March 13, 2018, states,

14

"GEICO Marine Insurance Company is pleased to announce a new Marine Insurance Policy which will replace your previous policy with this renewal. A copy of the new policy in its entirety is enclosed, along with a Notice of Change in Policy Terms, which details the differences between the new and previous policy." The renewal policy included endorsements that amended the terms of the original policy. To be sure, O'Keefe stated that Geico did not require Quintero to go through the entire underwriting process again when renewing his policy, because "that would be a disservice to Mr. Quintero." However, the facts remain that on May 25, Quintero's policy had expired, his policy was not in full force, and Geico had to decide whether to issue and renew coverage for Quintero's boat. Thus, the doctrine of uberrimae fidei applies here.

To avoid the doctrine, Quintero reprises his argument that because his initial policy never expired and Geico renewed and backdated it, his statements on May 25 were thus not material to Geico's decision to issue coverage for his boat. This argument fails for two reasons. First, Quintero's policy did expire on May 5, as explained above.

Second, Quintero's statements were material to Geico's issuance of coverage on May 25, even if by renewal and backdating. Viewed from the perspective of a reasonable insurer, Quintero's misrepresentation that the boat was in his home and possession was material, as no "prudent and intelligent insurer"

15

would accept the risk of insuring stolen property that is no longer in the insured's possession. See Kilpatrick, 795 F.2d at 942-43. When Quintero made the call at 7:28 a.m. on May 25, the boat had already been missing for two and a half hours, and Quintero had a duty to disclose that fact even if Geico did not directly ask him. The call was made several hours after the theft of the boat and after weeks of Quintero not paying his renewal premium.

Even if we assume, dubiously, that Quintero did not know for sure the boat was already gone at the time of his misrepresentation, that has no impact on our analysis. See HIH Marine, 211 F.3d at 1363. That the boat was missing from his own home at the time of the 7:28 a.m. reinstatement call is a fact that ought to have been within his knowledge, and one he was obligated to disclose even if Geico had not asked. See id. at 1362-63; Steelmet, 747 F.2d at 695 (stating that uberrimae fidei imposes the burden to disclose material facts that are "within or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge" (quotation marks omitted)).

Quintero also argues that O'Keefe's first affidavit should be disregarded as to materiality, but we need not rely on O'Keefe's affidavit to assess materiality. See Woods v. Indep. Fire Ins. Co., 749 F.2d 1493, 1496 (11th Cir. 1985) (noting that materiality "can be decided as a matter of law if reasonable minds could not differ on the question."). An insured's possession of the subject property is clearly

16

material to the insurer's risk in insuring it, and we agree with the district court's commonsense observation that "insuring a stolen Vessel is akin to insuring a loss." Accordingly, the district court properly applied the doctrine of <u>uberrimae fidei</u> and correctly held Quintero's renewal policy was void <u>ab initio</u>.[2]

## V.  CONCLUSION

For the reasons above, the district court did not err in granting Geico's motion for summary judgment and denying Quintero's motion for partial summary judgment.[3]  Accordingly, we affirm.

**AFFIRMED.**

---

[2]The renewal policy also included a fraud and concealment provision, which stated: "There is no coverage from the beginning of this policy if an **'insured'** has omitted, concealed, misrepresented, sworn falsely, or committed fraud in reference to any material matter relating to this insurance before or after any loss."  Because Quintero's renewal policy was void <u>ab initio</u> under the doctrine of <u>uberrimae fidei</u>, we need not address this provision.

[3]Quintero's notice of appeal also refers to the district court's denial of his Rule 59(e) and 60(b) motion.  To the extent Quintero challenges any aspect of that ruling on appeal, his arguments lack merit.

17